## JARED OLMSTEAD *vs.* THE WINSTED BANK.

Where bank bills have been stolen from a' bank, any holder receiving them in good faith in the regular course of business and for a valuable consideration, can recover upon them against the bank.

But such bona fide holder does not acquire an absolute title which he can transmit to a purchaser who has notice that they were stolen.

A party is not concluded by the testimony of his own witness to a particular fact, but may prove the fact to be different by other competent testimony, however much the particular contradiction may tend to discredit the witness generally.

ASSUMPSIT on a bank bill. Plea the general issue, with notice that the bill had been stolen from the bank and purchased by the plaintiff with knowledge that it had been stolen. Tried in the superior court, on an issue closed to the court, before *McCurdy, J.*

On the trial the plaintiff introduced in evidence the bank bill described in his declaration, accompanied by a notarial protest thereof, stating that payment was refused on the ground that the bill had been stolen with others from the bank, and it appeared that the plaintiff bought the bill at a discount, with knowledge of the protest and cause of protest, and immediately thereafter commenced this suit without any further demand of payment. The defendants offered evidence to prove that their banking house was robbed in the night in November, 1861, and that the bill in question with others was then stolen from the bank; that about the 1st of May, 1862, White, Morris & Co., brokers in the city of New York, purchased this bill with others, knowing them to be stolen property, from Boyd & Co. of Chicago, at a discount of twenty per cent; that White, Morris & Co. caused these bills to be protested and afterwards sold them with the protest attached to one Augustus Seeley, who sold them in like manner to his brother, William P. Seeley, from whom the plaintiff purchased. The defendants, as part of their proof, read the deposition of one Noel Hardee, in which the deponent stated that in February or March, 1862, he purchased a large quantity of bills of the Winsted Bank, in Canada, of one Kimberly, whom

he had formerly dealt with as a stock broker in the city of New York, and soon after left the bills for collection or sale with Boyd & Co. of Chicago, and that these were the only bills of that bank that he had ever purchased of Kimberly. The defendant further stated that he paid for the bills at a discount in gold, and that at the time of the purchase he had no knowledge whatever of the robbery of the Winsted bank. The plaintiff claimed that it appeared from the deposition that Hardee took the bills in the usual course of business and in good faith, and that he had a right to recover under such bona fide title of Hardee, notwithstanding his own bad faith or that of the other intermediate parties through whom he claimed. The defendants denied the law to be as the plaintiff claimed, but insisted that in fact Hardee was not a bona fide purchaser, and in support of this claim offered evidence to show that Kimberly was a notorious dealer in stolen money, and a " go-between " between the robbers and the brokers, and that Hardee was a traveling broker, pursuing his business in Canada and the more northerly cities of the union. To this testimony in regard to Hardee the plaintiff objected, on the ground that the defendants had no right to impeach their own witness. The court overruled the objection and admitted the testimony, not as impeaching the witness, but as tending to show that the witness was familiar with matters connected with bank bills, and likely to know that the bank had been robbed, and that the bills in the hands of Kimberly were stolen bills.

The court decided the case in favor of the defendants, and the plaintiff moved for a new trial for error in the rulings of the court.

*Hawley* and *Taylor*, in support of the motion.

1. The plaintiff is entitled to recover, without reference to the question whether he came by the bills in good faith. Hardee, the defendants' own witness, testifies that he bought the bills for a valuable consideration and with no knowledge of the robbery of the bank. He therefore acquired a right to recover upon them. *Miller* v. *Race*, 1 Burr., 452 ; *Peacock*

v. *Rhodes*, Doug., 633 ; *King* v. *Milsom*, 2 Camp., 5 ; *Collins* v. *Martin*, 1 Bos. & Pul., 648 ; Chitty on Bills, 277. There is no evidence that Kimberly came by them otherwise, and if he did it is immaterial. The right to recover upon them acquired by Hardee was transmitted by the sale to the plaintiff, who is equally entitled to recover. 1 Saund. Pl. & Ev., 304; Bayley on Bills, 397. The fact that the plaintiff bought the bills at a discount, and the fact that the bill in question had been protested with a statement in the protest that the bank claimed that it was stolen, very clearly constitute in themselves no reason why the plaintiff should not recover.

2. The court erred in admitting the evidence offered by the defendants to contradict Hardee in his statement that he took the bills with no knowledge of the robbery, and paid a valuable consideration for them. He was their own witness and had sworn positively to this. They offered evidence to show that he must have known or was likely to have known that the bills were stolen, and that therefore he did not buy them in good faith, but had been guilty of falsehood in what he had sworn. The testimony was admitted explicitly for this purpose. We contend that this evidence was inadmissible as it went directly and inevitably to impeach him. It is stated in the motion, it is true, that it was not admitted as impeaching the witness, but its only effect and only tendency was to impeach him. That which proves or tends to prove a witness guilty of known conscious falsehood impeaches him, and much more effectually than any proof of general bad character can. The testimony offered was not to show the witness merely mistaken, not to contradict him by proof by other competent witnesses of a fact or state of things different from or inconsistent with that to which he had sworn and about which he might be innocently mistaken, but it went to prove a fact which he must have known and yet deliberately denied; in other words that he had deliberately sworn to a falsehood. It went to prove him corrupt and unworthy of belief, and therefore to *impeach* him, in the worst sense of that word. "Where a party presents a witness in proof of his cause he thereby in

general represents him as worthy of belief, and the law will not permit him afterwards to impugn his credibility by general evidence tending to show him unworthy of belief." 1 Greenl. Ev., § 442. "The law holds a party calling a witness to have adopted and considered him as credible." *Whitaker* v. *Salisbury*, 15 Pick., 545. The testimony offered falls within none of the classes of cases mentioned in some of the books, in which the general rule excluding such evidence is relaxed. 1. The defendants were not obliged to call the witness, as in the case of an attesting witness. 2. The evidence did not go to prove any particular contradictory fact. 3. Nor was it proof of a previous different statement by the witness. 4. Nor was the party taken by surprise ; they had had the deposition a long time and knew its contents. If this testimony was properly admitted it is difficult to fix a limit to the power of a party, whenever occasion may require it, to blacken and destroy his own witness by showing him unworthy of belief.

*O. S. Seymour* and *G. Hall*, contra.

1. The evidence offered to show that Hardee was not a bona fide holder of the bills was admissible. A party calling a witness is not precluded from proving the truth of any particular fact by any other competent testimony, in direct contradiction to what such witness may have testified, not only when it appears that the witness was innocently mistaken, but when the evidence may collaterally have the effect of showing that he was generally unworthy of credit. 1 Greenl. Ev., § 443 ; *Brown* v. *Bellows*, 4 Pick., 179 ; *Lawrence* v. *Barker*, 5 Wend., 305 ; *Bradley* v. *Ricardo*, 8 Bing., 57 ; *Ewer* v. *Ambrose*, 3 Barn. & Cress., 746 ; Swift Ev., 144 ; 2 Phill. Ev., 780 ; Cowen & Hill's Notes to Phill. Ev., notes 535, 536. Hardee was an important witness for the defendants. Through him they traced the bill in suit almost back to the robbers ; they traced it back to Kimberly; a dealer in stolen money; they traced it to Canada, where it was found with a large package of other Winsted Bank bills, shortly after the robbery ; but Hardee, willing to justify himself, had said in his deposition that he did not know that the bills were stolen.

The plaintiff seizes upon this portion of the deposition, and says that Hardee swears in substance that he became a bona fide holder of the bills ; and he says, upon that fact the law is so that he can recover under Hardee's good faith, if he can not under his own. We agree that Hardee does so swear, and the evidence offered by the defendant is offered to show that in truth Hardee was not a bona fide holder of the bills. The defendants offer proof that "Hardee was a traveling broker, pursuing his business in Canada, and the more northern cities of the union." This, in connection with the fact that Kimberly was a notorious dealer in stolen money, certainly tended to show that Hardee did not receive the bills in good faith as an innocent holder ; indeed the evidence was not objected to as irrelevant, but only as impeaching the defendants' own witness. We may surely prove that in this particular Hardee is incorrect, even though the evidence may collaterally have the effect of showing that he is generally unworthy of belief. The testimony is not offered for the purpose of impeaching him ; on the contrary the defendants still rely upon Hardee's testimony. They have no interest in impeaching him. The plaintiff is the party who desires to impeach him ; and if the evidence which the defendants offered shows that Hardee received the bills in bad faith, the plaintiff has the benefit of that testimony in discrediting Hardee in other matters. The testimony is not objected to as irrelevant. But if relevant can we be deprived of it because our witness has sworn against us on that point ? or because the testimony does incidentally show our witness to be a receiver of these bills in bad faith ? All estoppels are odious because they tend to shut out the truth. But here an estoppel is claimed against one who has done no wrong that merits the punishment. The defendants indeed offer the witness and rely upon his testimony, but on one point the witness is so situated that he can hardly do otherwise than attempt to justify himself by saying that he purchased the bills in good faith. This fact, the plaintiff says, is fatal to our cause. What wrong have the defendants committed ? We were compelled to get our witness from the enemy's camp. We could hardly be required to trace the

title of a stolen bill back to the robbers, except through these " go-betweens " that are only semi-respectable.

2. The testimony objected to and received was wholly unnecessary and immaterial, and the receiving it did the plaintiff no damage. By means of that testimony the defendants sought to prove that Hardee was not a bona fide receiver. The plaintiff having received the bill knowing it to have been stolen, can not protect his title by the supposed bona fide title of Hardee. In order to recover against the maker upon a note stolen from the maker, the plaintiff must himself be a bona fide holder without notice. *Grant* v. *Vaughan*, 3 Burr., 1527 ; *Hinton's case*, 2 Shower, 235 ; *Paterson* v. *Hardacre*, 4 Taunt., 114 ; 3 Kent Com., 78 ; *Collins* v. *Martin*, 1 Bos. & Pul., 651. In general, stolen property may be reclaimed by the owner in the hands of a bona fide receiver, but an exception is allowed in respect to bank bills, which exception is founded upon public policy ; and the peculiar privilege of the taker of such bills is founded upon the entire good faith of the receiver. Even if he took the bill under suspicious circumstances, he must clear up these circumstances. The *onus* is cast upon him. 3 Kent Com., 78. If the holder received the bill bona fide he may recover on it of the bank ; but public policy requires that the bank should have the privilege, by notice, of stopping the further circulation of a stolen bill, that the bill may be traced back to the robber, and the crime discovered, and that the good faith of the holder may be promptly inquired into. The rule claimed upon the part of the plaintiff would greatly obstruct the detection of the crime. A person receiving stolen property, knowing it to have been stolen, and concealing it, is, both at common law and by our statute, himself a thief. The case does not find that White, Morris & Co. concealed the bills, but their conduct in buying the bills as they did, and selling them as they did, and the plaintiff's conduct in purchasing them as he did, have the effect of a concealment, and tend to obstruct the course of justice, and are inconsistent with that absolute *bona fides* which the plaintiff ought to show to entitle him to the peculiar privilege which he claims. Lord Mansfield, in *Miller* v. *Race*, 1 Burr., 458, says:—" Here is no

pretence or suspicion of collusion with the robbers; for the matter was strictly inquired into at the trial, and it is stated in the case that he took it for a full and valuable consideration, and in the usual course of business." Such absolute good faith is essential to outweigh the real title of the defendants, who have never issued this bill, but have been robbed of it. The plaintiffs probably rely upon the cases in equity, where it is holden that a party having a legal title without notice of an equity, may sell and pass a good title to a purchaser who has notice of the equity. Thus a purchaser of land without notice of an unrecorded deed may sell to a person who has notice, and the latter will hold the land against the unrecorded deed. In such case the first grantee has a perfect title both at law and equity, and the court say therefore, he may sell his perfect right to any one; otherwise the value of his title would be impaired. And this principle was once applied to a negotiable note. *Chalmers* v. *Lanion*, 1 Camp., 383. That was however the case of a bill void as being given for a debt contracted in a smuggling transaction, not a stolen bill; and the plaintiff had only constructive notice even of that defense.

BUTLER, J.* This case is submitted upon briefs. Upon a careful examination of them we are satisfied that the judgment is right and should not be disturbed.

We assent to the claim of the plaintiff that the protest was not evidence of the fact that the bills were stolen, and constituted no objection to a recovery if they were not. It was evidence of notice that the bank claimed that they were stolen, and admissible upon the question of *bona fides*, and does not appear to have been admitted for any other purpose.

And we assent to the claim that the purchase of the bills at a discount did not constitute an objection to a recovery in itself. But the offer to sell bank bills at less than the genuine bills of the bank are selling in the market, is calculated to excite suspicion, to a greater or less extent according to cir-

---

* This case having been submitted on briefs, Judge Butler took part in its decision, though not present at the term.

cumstances, and that fact also is admissible on the question of good faith. But it does not appear that any point was made upon that question on the trial.

And we assent also to the claim that if the bills were in fact stolen, any holder not concerned in the theft, who came by them bona fide, in the regular course of business and for a valuable consideration, could recover upon them against the bank.

But we do not assent to the proposition that such bona fide holder acquired an absolute property, which he could transmit to a purchaser who had knowledge that the bills were stolen, or were claimed to have been stolen from, and not issued by the bank. There are dicta which seem to sustain the last proposition of the plaintiff, but no decided case in point, and we are satisfied that the law ought not to be so.

In the leading case of *Miller* v. *Race*, decided by Lord Mansfield in 1758, the first cited on the plaintiff's brief, the action was trover for a bank note issued by the bank, and lost by the real defendant, and taken by the plaintiff bona fide in the course of business for a valuable consideration. That learned judge held, in an elaborate opinion reviewing all the earlier cases, that the plaintiff could recover from the defendant who withheld it as agent of the owner, on the ground that the plaintiff took the note as money in the course of business, without collusion or any ground of suspicion, for a valuable consideration ; and because it is necessary to the currency of bank bills as money, that a bona fide holder of them who so takes them in the course of business shall be clothed with a title for his protection. But the opinion of Lord Mansfield does not go the length claimed by the plaintiff in this case. He held expressly that trover would lie in favor of the true owner against a *finder* before he had paid it away in currency, and impliedly that it would lie against a holder for valuable consideration who took it collusively, or under any circumstances of suspicion or unfair dealing ; and if that is so, the holder has not a title which he can confer upon one who does not take himself bona fide, without cause for suspicion, for a valuable consideration and in the course of business. The

real title remains in the true owner, and does not accompany the bill, and is not obtained by the finder or the thief, but the law on principles of policy confers upon the bona fide holder such equitable title as is necessary for his protection. He may collect the note of the bank, or pay it bona fide in currency ; but his title is limited to the necessities of the case, and does not pass to another, who takes it with knowledge or cause of suspicion in respect to the real and equitable character of the holder's title.

The next case cited on the plaintiff's brief is *Peacock* v. *Rhodes*, (Douglass, 633,) decided by Lord Mansfield in 1781. That was an action on a bill of exchange which had been stolen and negotiated to an innocent indorsee, and the principles enunciated by him in *Miller* v. *Race*, were so far as applicable re-affirmed.

The third case cited in the order of time, is *Collins* v. *Martin*, (1 Bos. & Pul., 648,) decided in the common pleas in 1797. That too was trover for endorsed bills of exchange, wrongfully pledged for a valuable consideration by the person with whom they were deposited. There too the same principles were applied and the same distinction between endorsed bills of exchange or bank notes and other property, founded on the necessity of recognizing an equitable title in the bona fide holder to preserve their negotiability, is recognized, and the doctrine is pointedly stated to be, that a holder for value who receives them in the course of business may say to the real owner when he demands them, " You have the title, but you shall not be heard in a court of justice to enforce it against good faith and conscience." Chief Justice Eyre in that case, and in an elaborate opinion, often referred to with approbation, and in the language quoted, founds the title of the holder upon an equitable estoppel, and that doctrine is in harmony with the decisions of Lord Mansfield, the current of authority and the analogies of the law.

Another case cited by the plaintiff is *King* v. *Milsom*, 2 Campb., 5. That was trover for a lost bank note, not against the finder, but a bona fide holder for a valuable consideration, and the holder retained it. There is nothing in the decision,

or the opinion of Lord Ellenborough in the case, in conflict with the doctrines settled in *Miller* v. *Race* and *Collins* v. *Martin.* The plaintiff also cites Chitty and Bayley on bills, but we find no dicta in them, or in any other decided case, irreconcilably conflicting with the doctrine of Lord Mansfield, or which are deserving of serious consideration; and we are satisfied that a bona fide holder of a lost or stolen bank bill or endorsed bill of exchange has not the absolute, perfect and transferable title of a real owner, but an equitable title by estoppel, created by usage, and protected by the law, because necessary to the perfect negotiability of such paper, but in conflict with the *undivested* rights of the true owner, and recognized and protected no farther than that necessity requires. Such being the law in respect to the title of a holder of a lost or stolen bill, and the court having found that these bills were stolen from the bank, and that the defendants are the true owners of them, and that the plaintiff took them with protest attached and notice that they were claimed by the bank as their property and because they were stolen, it is apparent that the plaintiff can never recover, and that substantial justice has been done, whether there was or was not error in the ruling of the court in respect to the admissibility of evidence.

But we discover no error in that ruling. It is elementary law that a party shall not be permitted to attack, by evidence of general reputation, the credibility of his own witness. On the other hand it is equally well settled, that if his witness testifies in respect to a particular fact contrary to what he believes to be true, he may prove the fact to be otherwise by other competent testimony, however much the particular contradiction may tend to discredit the witness generally. The *extent* to which a contradiction in respect to a particular fact will show the witness unworthy of belief generally, can not be relied upon as a guide in respect to the admissibility of such testimony. The only safe and practicable distinction therefore, and that which is generally adopted, is between an *impeachment generally* and a *contradiction* in respect to a *particular fact*, and the court below were correctly governed by it.

A new trial is not advised.

In this opinion the other judges concurred; except Mc-Curdy, J., who having tried the case in the court below did not sit.

---

## SUPREME COURT OF ERRORS.

### NEW LONDON COUNTY, OCTOBER TERM, 1864.

Present,

HINMAN, C. J., DUTTON, McCURDY AND PARK, Js.