Roberts v. Hall.

———————◆◆◆———————

## EDWARD S. ROBERTS vs. WILBER HALL.

A held the promissory note of the defendant, obtained of him by fraud, and which the defendant had demanded back immediately on discovering the fraud. The note was payable to A's order and on time, and before due A indorsed it to the plaintiff in trust in part for certain creditors and the balance for A's wife the plaintiff having no knowledge of the infirmity of the note. The creditors accepted the transfer and directed the plaintiff to bring suit on the note when due. Held—1. That so far as the trust for A's wife was concerned .the plaintiff took the note as agent of A and therefore with its infirmity. 2. That the entire transaction by which the note was transferred to the plaintiff was out of the regular course of business, and that the note therefore remained open to the defense of fraud.

The wife of A was living apart from him, but was not divorced. Held not to affect the case.

The taking of negotiable paper as a security for, or payment of, a pre-existing debt, is not out of the regular course of business.

The question whether negotiable paper was taken in the regular course of business resolves itself into the inquiry whether mercantile paper is ordinarily used in the manner in which the paper in question was used, and whether a business man would ordinarily have received the paper in the circumstances in which it was offered and have parted with his property for it.

ASSUMPSIT upon a promissory note of the defendant, by the plaintiff as indorsee ; brought to the Superior Court in Litchfield county. The following facts were found by an auditor to whom the case was referred.

On the 1st day of August, 1865, one Frederick A. Yale sold to the defendant a span of horses, harness and wagon for the sum of $700, and the defendant executed and delivered

to him therefor his two negotiable notes, payable to Yale or bearer, dated August 1st, 1865, each for the sum of $350, with interest annually, one payable one year from date and the other two years from date.   As collateral security for the payment of the notes the defendant placed in the hands of Yale two other promissory notes, one for the sum of $400, given by Joseph Deming and made payable to the defendant, the other for $300, given by Edward Taintor, payable to the defendant, and secured by a mortgage deed of real estate from Taintor to the defendant.

At the time of the sale of the horses Yale fraudulently represented them to be sound, and warranted them to be sound, when in fact they were permanently lame and unsound, which was known by Yale ; and on the next day the defend-ant told Yale that the horses were lame and unsound, and offered to return them and the harness and wagon, and de-manded of Yale the notes and securities, but Yale refused to take the property back and deliver up the notes and securities.

Afterwards, about the 1st of August, 1866, when the first note became due, Yale collected of Joseph Deming the amount of the note of $400 held as collateral security, and the value of the same, adding the accumulated interest to the principal, was $450.   The amount due at that time on the first note, together with interest for one year, was $371, and the money received by Yale paid the first note and left a balance of $79 to be applied as part payment on the second note.

At the time of the sale the horses were worth $350, and the harness and wagon $50, of which the defendant had the benefit.

In the month of May, 1867, before the second note became due, Yale transferred and assigned by delivery, and without consideration except as hereinafter set forth, to the plaintiff, the brother of the defendant's wife, the two first mentioned notes, together with the note of Taintor and its mortgage security, in trust for the following purposes, to wit, that the plaintiff should collect whatever might be due on the second note and pay over the same to his, Yale's, creditors, viz : to Lyman Dunning about $77 ; to H. J. Mead about $75 ; to Daniel

and John Dean about $75 ; to Wm. Adam about $50; and the balance, if any there should be, to Yale's wife, who was then living separate from her husband and has since been divorced from him. The plaintiff accepted the trust, and notified the creditors of the same, and they ratified and confirmed the transfer ; and the plaintiff is following their directions in bringing and prosecuting the present suit against the defendant for the collection of the note.

At the time of the assignment and transfer of the notes to the plaintiff he had not any knowledge of any failure in the consideration of the notes, but took them in good faith for the purposes stated. Yale at the time informed him that he had collected the collateral $400 note of Deming and that the amount was to be applied as part payment on the defendant's two notes.

The auditor found, subject to the opinion of the court upon the questions of law arising on the facts found, that the plaintiff was entitled to recover of the defendant the sum of $347.48.

On the hearing on the report the defendant claimed that, on the facts reported, the plaintiff was not the bonâ fide holder of the note for value paid, and that in his hands it was subject to a deduction of the amount found by the auditor to be justly due him on account of the breach of warranty ; and that the amount being greater than the balance due on the note, judgment should be rendered for the defendant. Also that the assignment of the note by Yale to the plaintiff was void as against the defendant, because it was not in writing for the benefit of all the creditors of Yale in proportion to their respective claims, of which creditors the defendant was one, being found to be such by the auditor.

The court (*Granger, J.,*) overruled all the claims of the defendant and rendered judgment for the plaintiff for the sum found due by the auditor and costs. The defendant brought the record before this court by a motion in error, assigning as errors the adverse rulings of the court upon the points above stated.

*G. C. Woodruff* and *Hitchcock,* for the plaintiff in error.

The plaintiff is the mere collecting agent of the payee; and in the plaintiff's hands the note is subject to all the infirmities to which it would be subject in the hands of the payee. In the hands of the payee it would be subject to the claim of the defendant, growing out of the fraud by which it was obtained from him, and the breach of the warranty; and it is subject to the same claims in the hands of the plaintiff. Story on Prom. Notes, § 190; *Denniston* v. *Bacon*, 10 Johns., 198; *Herrick* v. *Carman*, id., 224; *Grew* v. *Burditt*, 9 Pick., 265; *Lawrence* v. *Stonington Bank*, 6 Conn., 521; *Buller* v. *Harrison*, Cowp., 565, 568; *Collins* v. *Martin*, 1 Boss. & Pul., 651; *Barker* v. *Prentiss*, 6 Mass., 430.

*E. W. Seymour*, for the defendant in error.

The note was transferred by Yale to Roberts before due, and in good faith, for the benefit of certain creditors named, and as security for their debts. There were several creditors, and the note was more than large enough to pay them all. Yale, instead of putting it into the hands of one of the creditors, chose to put it into the hands of a third person for their benefit. He treated him as the agent of the creditors and treated the putting into his hands of the note as giving the creditors security for their claims. Roberts understood the transaction in the same way. He accepted the notes as security for the claims of the creditors named, so far as he could as between him and Yale. He notified the creditors of the security Yale had put into his hands for their benefit, and they "ratified and confirmed the transfer;" thus in the fullest manner accepting him as their agent to hold the security, collect the same when due, and account to them, accepting also the security in his hands; by all which Roberts came under obligations to the creditors to retain possession of the note for them, and to collect it and account to them for the proceeds. Yale had no more control over it; his delivery of it as security had been accepted, and that he understood that he relinquished all control over it is apparent from the fact that he provided for the disposition of the residuum after the creditors were paid. In short Roberts received

the note as trustee for the creditors. The creditors accept him and accept the note as security in his hands, and to the fullest extent confirm his appointment as their agent in the matter. As trustee for the creditors Roberts could bring suit in his own name for the benefit of his *cestui que trusts*; and the creditors, treating the security as given directly to them, could direct their agent to commence suit in his own name in their behalf.

It is now generally held, in conformity to our Connecticut decisions, that a party to whom a negotiable note is trans-- ferred before maturity, as security for an antecedent debt, is a *bonâ fide* holder for value, and that such note is taken in "the regular course of business." *Brush* v. *Scribner*, 11 Conn., 388; *Bridgeport City Bank* v. *Welch*, 29 id., 475;: *Swift* v. *Tyson*, 16 Peters, 1; 1 Parsons' Notes & Bills, 256.. The question then briefly is, whether Yale parted with the note in the regular course of business. If the effect of the transaction was to give the creditors security for an antecedent debt, there will be no real difficulty in the case. It will of course be admitted that the creditors took the note in good faith, if, as we contend, they did take it, for the contrary is not claimed nor found, and the decisions now unite in holding that knowledge of want of consideration, fraud, &c. must be affirmatively proved as against a holder for value. 1 Parsons, Notes & Bills, 258.

CARPENTER, J. The facts of this case are briefly these: The note in suit is one of two notes, given for the purchase money of certain property sold to the defendant by one Yale. The defendant was induced by fraud to give his notes for $700, for property which was worth but $400. The day after the sale the fraud was discovered by the defendant, who there- upon offered to return the property to Yale, and demanded a return of his notes, but Yale refused to accept the property and return the notes. The other note, and $79 of this note, were paid to Yale from the avails of certain collaterals, which payments exceeded the value of the property. This note, before due, was transferred to the plaintiff, in trust for the

payment of certain creditors named, with a balance payable to the wife of Yale, who was then living apart from her husband, and who has since been divorced. The creditors assented to the trust, and directed the plaintiff to commence and prosecute this suit. The note is more than sufficient to pay the creditors named, so that if collected there will be a balance to be paid to the wife. The plaintiff had no knowledge of the fraud, and took the note in good faith for the purposes stated. There was no consideration for the transfer except the claims of the creditors. Whether the payee was or was not, at the time of the transfer of the note, insolvent, does not appear.

Upon these facts the Superior Court rendered judgment for the plaintiff. The court therefore must have decided that the plaintiff took the note in good faith, for a valuable consideration, and in the regular course of business.

The case presents two questions.

1. Is the plaintiff to be regarded as a trustee for the creditors, or the agent of the payee? If the latter, it is conceded that the plaintiff is not entitled to recover; if the former, then the plaintiff insists upon his right to recover and the defendant denies it.

We think the plaintiff, to a certain extent, is a trustee for the creditors. The auditor has clearly found that the note was transferred to the plaintiff in trust for the creditors and Mrs. Yale, and that the creditors ratified and confirmed the transfer, and that the plaintiff is following their directions in bringing and prosecuting this action.

In respect however to that portion of the note which was payable to Mrs. Yale, we are clearly of the opinion that he was the agent of the payee, and was in no sense a trustee for creditors. The ordinary relations between husband and and wife will be presumed to have existed in this case until the contrary appears. It is only found that they were living apart, and have since been divorced. No indebtedness from him to her is found; and, so far as appears, the money, as soon as paid to her, would have been subject to his control. The legal effect of the transaction then, so far as it relates to

this question, is the same that it would have been if the balance had been payable to him. To the extent of that balance, therefore, the judgment is clearly erroneous, and it must be reversed.

2. Was this note taken in the regular course of business ?

In the discussion of this question we shall not controvert the legal proposition that a negotiable note transferred before due in the regular course of business to a creditor, in payment of, or as security for, a pre-existing debt, is taken in good faith and for a valuable consideration, and is collectible in the hands of the creditor, notwithstanding any equities existing as between the original parties thereto. That question has been correctly settled in this state, and elsewhere, and we have no disposition to disturb it. *Brush* v. *Scribner,* 11 Conn., 388 ; *Bridgeport City Bank* v. *Welch,* 29 Conn., 479.

Nor do we place our decision upon the ground that this note was obtained by fraud. We suppose the general rule to be that fraud is not available as a defense in cases of this character. To this rule however there are exceptions. *Foster* v. *Mackinon,* Law Rep., 4 C. P., 704 ; *Nance.* v. *Lary,* 5 Ala., 370.

But it is not material to our present purpose to enquire whether this case falls within those exceptions. Our object is rather to consider whether the rule of law which exempts commercial paper from legal defences applies to a case like this. We think it is pertinent to that inquiry to call attention to the fact that this note was obtained by fraud, and that the contract was not only voidable but was actually avoided by the maker immediately upon discovering the fraud. We need not say that it is the duty of the court to protect the maker, and prevent the consummation of the fraud, if it can be done consistently with the rules of law.

The only difficulty that we can perceive is, in preserving unimpaired the rule of law giving immunity to negotiable paper and the principles upon which it rests. That rule does not protect paper which was not taken in the usual course of business. That phrase, as Mr. Parsons in his work on Notes and Bills, Vol. 1, p. 256, justly remarks, is open to

some objection, for the reason that it does not clearly indicate what are the legitimate uses of negotiable paper. The question is variously expressed in the books:—" Was it in the course of trade ?" " Was it in the ordinary and regular course of business ?" " Was it a transaction which the law views as according to the usage of merchants ?"

A more definite idea of its meaning may be had, however, by stating the question more specifically. Is negotiable paper ordinarily used in the way and manner in which this was used ? Would a business man of ordinary intelligence and capacity receive commercial paper, when offered for the purposes for which this was transferred, as money, and upon its credit part with his property ? Or would he at once suspect the integrity of the paper itself, and the credit and standing of the party offering it ? A correct answer to these questions must settle conclusively the mercantile character of this transaction.

The fundamental principle of the law, applicable to negotiable paper, is, that it is the representative of money, and may be used in all mercantile transactions as its substitute. But when used for any purpose outside the usual and ordinary course of business, it ceases to carry with it the privileges and immunities with which the law clothes negotiable paper. The tendency of the law, in respect to the legitimate uses of negotiable paper, is thus referred to in 1 Parsons on Notes & Bills, p. 257 :—"And therefore we are disposed to believe that the law of this country is tending towards the rule, that whether negotiable paper is sold, or discounted, or indorsed over to pay a new debt, or for a new purchase, or to secure a new debt, or an old debt, or to pay an old debt, it becomes in each case the property of the holder, and carries with it all the privileges of negotiable paper, unless there be something in the particular transaction which is equivalent to fraud, actual or constructive." It will be noticed that this language is comprehensive, and was doubtless intended to embrace every instance in which such paper may be used and still retain its privileges. But it is not sufficiently broad to cover this case, as we shall presently see.

The doctrine that commercial paper may be properly used as security for a pre-existing debt has been disputed, and there are conflicting decisions upon that point; but it is now pretty generally established. The profession, however, did not readily acquiesce in the doctrine, inasmuch as there is an apparent hardship in allowing the holder of such paper, who parted with nothing upon its credit, to recover of one who, as against other parties, has a good defense. The reason upon which this doctrine rests, and without which the law would undoubtedly have been determined otherwise, is, that a very considerable portion of the negotiable paper made in business is used in this way. We can easily understand, therefore, that among business men, accustomed to deal in this kind of paper, the receiving or offering it as security for an old debt is not in itself calculated to excite suspicion, for the simple reason that it is according to usage; and if according to usage, presumptively at least, such use facilitates trade, and should receive the sanction of the courts unless there is some real and substantial objection to it.

But in the case before us no such usage appears. On the contrary the purpose for which the paper was used is exceptional and unusual. We apprehend that cases like this are rarely to be met with in business circles. Let us examine it more carefully. A man has a piece of negotiable paper with which he wishes to pay or secure certain debts. If there is but one debt he can transfer it directly to the creditor, and the law protects the transaction. That is according to the usual course of business. But if he transfers to a friend, to hold till due, and then collect it, and with its avails pay the creditor, that is unusual and suspicious upon its face, and requires explanation. Unless some good reason can be shown for such a proceeding, the law ought not to protect it. But it is said that here were several creditors, which, it is claimed, sufficiently explains the fact that the security was effected through the intervention of a trustee. Let us test this position. If the paper is right and free from defects, why not sell it in market or get it discounted, and with its avails pay the debts at once? Or, if the debts are not to be paid until the

paper is due and collected, why not retain it in his own hands until due, and if necessary sue and collect in his own name? Such a course would be natural and usual. But what honest reason can be suggested why it should be transferred to a third party, who has no interest in the matter, to be sued in his name? Such a course is unusual, and not in the course of trade. The transaction at once suggests the idea that there is some equity in favor of the maker inherent in the note itself, and which can be made available as against the payee, and which the payee is seeking to avoid.

But there is another circumstance appearing in the case which makes the unusual character of the transaction still more apparent. The creditors are informed of the transfer, they ratify and confirm it, and direct the commencement and prosecution of this suit. What occasion is there for all this, except to make it appear that the plaintiff is a trustee for the creditors? And why is it desirable that it should appear that he is a trustee for the creditors, unless for the very purpose of shutting out this defense? If Yale was in fact solvent, this proceeding was extraordinary and inexplicable upon any theory consistent with honesty and fair dealing. At least no sufficient reason for it appears in the case. If he was insolvent, another and insurmountable difficulty is at once encountered. The conveyance, not being in conformity to the provisions of our insolvent law, and operating to pay the creditors named in full, thereby giving them a preference, contravenes the policy of that law, and is therefore void as against creditors. Surely it will not be contended that such a conveyance should receive the sanction of this court as a legitimate mercantile transaction.

The fact that a part of this money was payable to the wife of Yale is worthy of notice also in this branch of the case. To that extent, as we have already seen, the plaintiff was the agent of Yale. We have no occasion to say that this circumstance alone renders this conveyance void at common law. But if there was a secret trust in favor of Yale, and the operation of the conveyance should be to defraud creditors, it certainly would be void as against creditors. A fraudulent

Roberts *v*. Hall.

conveyance can in no sense be said to be in the usual course of business. But be this as it may, the fact that Yale himself is still interested in this note, either in his own right or in right of his wife, should suggest to all parties concerned an inquiry as to the reason and occasion of this conveyance.

We are not referred to any case directly in point, and are not aware that any exists; but we believe the views above expressed are in harmony with reason and good sense, and not in conflict with any adjudged case. In *Billings* v. *Collins*, 44 Maine, 271, it was held that the assignment of negotiable paper, by operation of a bankrupt or insolvent law, was not in the regular course of trade, and that the assignee could only acquire the rights of the insolvent. The opinion of the court is brief, simply announcing the result without adducing any argument in its support; but we have no reason to doubt the correctness of the decision. So far as it goes it supports our position in the present case.

For these reasons, after careful consideration, we have come to the conclusion that this note was not taken in the regular course of business, and that the judgment of the court below upon that ground was erroneous, and must be reversed.

In this opinion the other judges concurred; except GRANGER, J., who tried the case below, and SEYMOUR, J., who had been consulted in the case when at the bar, and who did not sit.