HANNAH G. PARSONS *vs.* THE UTICA CEMENT MANUFACTURING COMPANY.

Third Judicial District, New Haven, June Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Proof that the plaintiff is the holder of a bond issued by the defendant and payable to bearer, which is produced upon the trial, raises a presumption of title which is sufficient to make out a prima facie case; but as soon as it further appears, either by the plaintiff's witnesses or those of the defendant, that the bond was stolen or fraudulently obtained from an intermediate holder to whom it belonged, this presumption is no longer available, and the plaintiff is bound to show by affirmative evidence that he not only acquired the bond in good faith, that is, without knowledge or notice of the theft or fraud, but also that he paid therefor a valuable consideration.

This rule, recognized by the Negotiable Instruments Act (General Statutes, § 4229), was simply a codification or re-enactment of the common law in reference to this subject.

No one, at common law, could be a holder "in due course," unless he had given a valuable consideration for the obligation sued upon; for that expression refers to due course of trade, and trade rests upon an exchange of values.

Proof that another owns the obligation sued upon, if not always admissible as evidence that the plaintiff does not, is admissible at

Parsons *v.* Utica Cement Mfg. Co.

least where it tends to support the claim that he is a holder in bad faith.

In the present case it appeared that the bond in suit was at one time owned by an insurance company, from whose possession it had been fraudulently abstracted by the plaintiff's grantor.　*Held:—*

1. That the natural inference from this evidence, if unanswered, would be that the plaintiff had notice of the fraud; which would not be rebutted by evidence that soon after the fraud the charter of the company was annulled and its affairs wound up on receivership proceedings.

2. That the defendant was not bound to attempt to procure the revival of the insurance company and make it a party to the suit, before setting up that company's title to the bond.

It is within the power of the courts to revive a corporation whose existence has been terminated on receivership proceedings, and thereby enable it to sue upon an obligation due and payable to it.

The statute of limitations may prevent a remedy, but does not cancel the debt.

Whether adverse possession of the personal property of another, for so long a period as to make the statute of limitations a defense against any claim by him of title, has the effect of divesting him of title and transferring it to the party in possession, *quære.*

The question of whether the holder of the bond in suit could successfully interpose the statute of limitations as a defense to an action, should one be brought against him by the third person who was alleged by the defendant to own the bond, is one that cannot be determined in an action to which such person is not a party.

The defendant introduced entries in its stock books to show that the plaintiff did not own certain of its stock at the time she claimed to have transferred it to the insurance company in exchange for the bonds in suit.　On cross-examination the plaintiff offered other entries in these books having no connection whatever with any matters involved in the present action, under the claim that they were inaccurate on their face, and therefore tended to impeach the accuracy of the entries relied upon by the defendant. *Held* that the evidence thus offered was so remote that the trial court committed no error in excluding it.

A party cannot complain of the exclusion of a conversation which, for aught that appears, is a mere narrative of past events and which, as to the other party, would be mere hearsay.

The defendant offered memoranda made by the secretary of the insurance company, accompanying a receipt for two of its bonds signed by its president and found in its safe, tending to show that the bonds in suit were in its possession long after the plaintiff claimed to have bought them.　*Held* that this evidence was clearly admissible.

Argued June 4th—decided July 20th, 1909.

ACTION on two negotiable bonds, brought to the Superior Court in Hartford County and tried to the jury before *Robinson, J.;* verdict and judgment for the defendant. *No error.*

*Henry T. Richardson* of Boston, for the appellant (plaintiff).

*John R. Buck* and *John H. Buck,* for the appellee (defendant).

BALDWIN, C. J.   The result of a former trial of this cause, in which a verdict was rendered for the plaintiff, is reported in 80 Conn. 58, 66 Atl. 1024.   On a second trial there has been a verdict for the defendant, and error is claimed in respect to the charge to the jury.

The complaint contains two counts, each alleging [as in Practice Book (1908) p. 438, Form 334] that $2,000 is due to the plaintiff from the defendant on an instrument under seal, of which a copy is annexed and marked as an exhibit. The first defense to each count was a general denial.   A second defense to each was that the bonds, which were payable to bearer and matured January 1st, 1890, more than sixteen years before the suit was brought, were owned, in 1887, by the Continental Life Insurance Company, and were then fraudulently taken from its possession by the plaintiff's husband, who was its president, without any consideration moving to the company, and came into her possession with notice of that fact, without any consideration moving from her, and that she was never a bona fide holder.   These allegations were denied by the reply.

On the first trial the jury were instructed that as the plaintiff had possession of the bonds, the burden of proof was on the defendant to show that she was not a bona fide holder, and that to do this it must satisfy them by a fair preponderance of evidence that she acquired the bonds

either without paying any value, or knowing that her husband had taken them from the insurance company improperly and fraudulently. It having been an undisputed fact, during that trial, that her husband's title was defective, we held this charge erroneous, since the burden was upon her to show value paid or want of notice of the defect, not on the defendant to show no value paid or the existence of notice.

In support of this conclusion, we referred to the Negotiable Instruments Act( (General Statutes, §§ 4171, 4222, 4229).⟩ Our attention is now called to the provision in (General Statutes, § 4170,) that the succeeding sections of the chapter, which include those above mentioned, shall not apply to negotiable instruments made and delivered prior to 1897.

The Negotiable Instruments Act, in most respects, was simply a codification of the common law in reference to the subject in hand. It was such in respect to the provision of (§ 4229 'that "every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."⟍ In Byles on Bills (Chap. IV, p. *60) the common law on this subject, with reference to the burden of proving a consideration, is thus stated: "The defendant is not in general permitted to put the plaintiff on proof of the consideration which the plaintiff gave for the bill, unless the defendant can make out a prima facie case against him, by showing that the bill was obtained from the defendant, or from some intermediate party, by undue means, as by fraud, felony, or force; or that it was lost, or that he received no consideration." Where, as here, it appears that the negotiable paper in suit, though there was nothing wrong in its original issue, was obtained from an intermediate party by fraud, proof of considera-

tion is only called for from the plaintiff because it would
tend to show that he nevertheless is a bona fide holder
within the meaning of that term in the law merchant.
Whether he acquired the paper by purchase or gift would,
under ordinary circumstances, be of itself unimportant
But after proof that it was once in the hands of a fraudu-
lent holder, it may justly be presumed to continue in the
hands of a holder of that character, until the contrary be
proved. *Collins* v. *Gilbert,* 94 U. S. 753, 761. The posi-
tion of the holder of negotiable paper is of an exceptional
character. He may acquire a title through a thief, and yet
maintain it against the original owner. But his possession
is not enough to support a recovery, after it once appears
that he must trace title through fraudulent practices and
unclean hands. *Totten* v. *Bucy,* 57 Md. 446, 452.

This is equally true whether the fraudulent practices
were connected with the original inception of the paper,
or, as in the present instance, occurred subsequently, to
the prejudice of an intermediate holder. *Fulton Bank* v.
*Phoenix Bank,* 1 Hall (N. Y.) 562; 2 Parsons on Notes &
Bills, *283; 4 Amer. & Eng. Ency. of Law (2d Ed.) 322. The
case of *Kinney* v. *Kruse,* 28 Wis. 183, asserts the contrary,
but is opposed to the strong current of authority.

The cause went to the jury, as respects each count, on
two issues. One was on the truth of the complaint: the
other was on the truth of the special defense.

As to the former issue, the plaintiff had the burden of
proof from the outset and to the end. *Lockwood* y. *Lock-
wood,* 80 Conn. 513, 521, 69 Atl. 8.

As to the latter issue, her production of the bond, its
due execution being admitted, raised a presumption of
title which made out a prima facie case. But as soon as
it appeared, either by her witnesses or those of the defend-
ant, that this bond was fraudulently abstracted from the
assets of a third party to which it originally belonged, this
presumption no longer availed her, and her original burden

of proof, only temporarily satisfied by its aid, rested upon her again, and now required her to show a title by affirmative evidence that she obtained the instrument both in good faith and for a valuable consideration. Her good faith she could only show by proof that, when the bond came to her, she had no knowledge of such fraud, and was not equitably chargeable with notice of it. *Baxter* v. *Camp,* 71 Conn. 245, 253, 41 Atl. 803, 71 Amer. State, 169, 42 L. R. A. 514; *Fulton Bank* v. *Phoenix Bank,* 1 Hall (N. Y.) 562, 577. The defendant, it is true, had the burden, for certain purposes, of proving that she took the bond with such notice and without consideration; but these purposes were accomplished when the fact was established of its fraudulent abstraction from the assets of the insurance company by her grantor. One legal presumption established by the law merchant was thus met with another legal presumption established by the same law, which by that law was sufficient to destroy it. In a concurring opinion, often quoted, given in a case of a similar character, in which a ruling of his at *nisi prius* was pronounced erroneous, Baron Martin observed that he did not profess to understand how, when several facts were alleged in a plea, all necessary to make it good, and all put in issue, proof of one could relieve a defendant from the burden of proving the rest; but that whatever might be the philosophy of that matter, the rule was so, and it was a useful one because it threw a difficulty in the way of fraudulent indorsements. *Harvey* v. *Towers,* 15 Jur. 544, 4 Eng. L. & Eq. 531.

The charge to the jury in the Superior Court, which followed the rule as stated by us when the cause was previously here (*Parsons* v. *Utica Cement Mfg. Co.,* 80 Conn. 58, 60, 66 Atl. 1024), was in conformity to the principles of common law procedure prior to the adoption of the Negotiable Instruments Act. The instructions thus given were that while the plaintiff, as holder of the bonds, was

prima facie their owner in good faith, if the defendant had satisfied them by a fair preponderance of evidence that they were fraudulently obtained from the true owner, the insurance company, then the burden rested on the plaintiff of proving that she acquired them in good faith and for a valuable consideration, without knowledge of the fraud, or without being chargeable with knowledge of it.

The law merchant which governed the disposition of the cause gave to bona fide holders, in due course, of negotiable bonds payable to bearer, the valuable privilege of suing on them in their own name, with all the rights for the purposes of the action of an absolute owner. But it deemed no one a bona fide holder in due course who obtained possession without giving any valuable consideration in return. *Brush* v. *Scribner*, 11 Conn. 388. It recognized the bona fide holder in due course, not as owner, but as having the rights of an owner for the purposes of suit, to be protected no farther than the necessity of maintaining the free negotiation of commercial paper requires. *Olmstead* v. *Winsted Bank*, 32 Conn. 278, 287. There was no necessity of that description to call for the allowance of actions by holders of stolen securities who paid nothing for them, even if they accepted them before their maturity and with no notice of any infirmity in their grantor's title. They might be bona fide holders, but they were not holders in due course; for that term refers to due course of trade, and trade rests on an exchange of values. *Roberts* v. *Hall*, 37 Conn. 205, 212.

A copy of the record of certain decrees of the court, entered at previous terms, in another suit, brought to wind up the Continental Life Insurance Company, was offered in evidence by the plaintiff, in rebuttal, but excluded. One of these, passed soon after the time when she claimed that she acquired the bonds, placed it in the hands of receivers, and annulled its charter. Another, passed in 1897, finally discharged the receivers. This record was offered to show

that the insurance company was not in a position to make any claim to the bonds.

A request by the plaintiff was also made and refused for an instruction to the jury that, it being undisputed that the insurance company was at one time owner of the bonds, and paid value for them, it would be no defense to this action against their maker, should they find that the plaintiff paid no value for them, or acquired them from one who took them wrongfully from the company.

These rulings bring up the fundamental question whether the defendant, not denying that it issued the bonds originally for value received, can escape payment on the ground that they do not belong to the plaintiff, when no one else has made or is now in a position to make any demand upon it for the performance of the obligation which they express. They are payable to bearer. The time for their payment has arrived. They are presented by a bearer who has been such for sixteen years. How can it be a defense that a corporation, now extinct, was more than sixteen years ago their bearer and, were it still in being, might be entitled, as against the plaintiff, to reclaim their possession by a paramount title?

The bearer of such an instrument does not prove title by his possession. As already stated, his mere production of it entitles him to recognition as invested with the rights of an owner only so far as the necessities of trade require. Proof that another owns it, if not always admissible to show that he does not, is admissible at least where, as here, it tends to support the claim that he is a holder in bad faith.

It was undisputed that at some time the bonds in suit belonged to the Continental Life Insurance Company, and the defendant had introduced evidence tending to show that in November, 1887, they were fraudulently abstracted from its possession by the plaintiff's grantor. A natural inference from this evidence, if it stood unanswered,

would be that the plaintiff had notice of his fraud. To prove that, soon after that fraud, the charter of the company was annulled and its affairs wound up, could not help to rebut this inference.

It was still within the power of the courts to revive it, and it could, if thus revived, sue for the vindication of its title to the bonds or to enforce their payment. *Sullivan County Railroad* v. *Connecticut River Lumber Co.,* 76 Conn. 464, 474, 57 Atl. 287. Should, in such case, a suit of the latter description be brought against the present defendant, it may be that no plea of the statute of limitations would be set up. That statute may prevent a remedy, but cancels no debts. *Belknap* v. *Gleason,* 11 Conn. 160, 164.

Both of the rulings in question by the court below were therefore correct.

It is unnecessary to inquire whether the plaintiff is right in asserting it to be a rule of law that adverse possession of the personal property of another, for so long a period as to make the statute of limitations a defense against any claim by him of title, has the effect of divesting him of title and transferring it to the party in possession. See *Campbell* v. *Holt,* 115 U. S. 620, 622, 6 Sup. Ct. Rep. 209; *Chapin* v. *Freeland,* 142 Mass. 383, 8 N. E. 128. It did not appear that the Continental Life Insurance Company ever had any knowledge of the fact that the plaintiff held these bonds, and there was evidence tending to show that she intentionally concealed that fact from it, and also from the defendant until the institution of this suit. Whether, in view of the evidence before the jury and of the provisions of General Statutes, §§ 1129, 1108, the statute of limitations could be successfully interposed to an action against her for the recovery of the bonds by the insurance company or its assigns, was a matter on which the court and jury could not be called upon to pass on the issues closed in this suit, to which that company was not a party.

It is suggested that the defendant cannot set up the title of the insurance company because it has, so far as appears, made no effort to procure its revival and then summon it in, as a party in interest. It was not bound to make such an effort in this suit, brought nine years after the company had been dissolved.

The plaintiff claimed to have taken the bonds, in October, 1887, from her husband who was then both president of the insurance company and treasurer of the defendant, in good faith, in exchange for a transfer then made to the insurance company of certain shares which she owned of the capital stock of the defendant. The defendant introduced certain entries in its stock books and claimed that they showed that she then had no such shares to transfer. The plaintiff thereupon, in cross-examining the secretary of the company, by whom the entries had been produced, offered to introduce certain other entries, in these books, of transactions having no connection whatever with any matters involved in the action, under the claim that they were on their face inaccurate, and therefore tended to show that the entries relied on by the defendant were also inaccurate.

The evidence thus offered was so remote that the court committed no error in excluding it, both at this time and when afterward offered in rebuttal.

The plaintiff produced a witness who testified that he received the bonds in suit from Mr. Parsons, in the latter part of the year 1887, for safe-keeping, and a few weeks afterward delivered them to Mrs. Parsons, and that while she held them he had a conversation with Mr. Parsons in regard to them, in the plaintiff's presence, but whether before or after she bought them he did not say. It was proper to exclude further testimony from him as to what this conversation was. For aught that appeared it was mere narration of past events, which as to the defendant would be pure hearsay.

The defendant introduced a memorandum dated November 23d, 1887, signed by the person then secretary of the insurance company, and found in the inside steel safe in the vault of the company by the receivers, on their appointment, stating that "Nos. 41 and 42" had been "taken by Parsons to be accounted for." These were the numbers of the bonds in suit. This paper, when found, was folded inside a receipt of the same date signed "J. S. Parsons Pt." for "two bonds Utica Cement Mfg. Co. for sale, account Continental Life Ins. Company."

There was clearly no error in admitting these papers. They tended to show that the bonds in suit were in the hands of the president of the insurance company for sale for its account at a date long after that when the plaintiff claimed she had bought them.

A few other rulings are made reasons of appeal which were so obviously correct as to merit no discussion.

There is no error.

In this opinion the other judges concurred.