Frank Crawford, Appellant, v. Earl Turner and Betty Turner, Individually and as Partnership, Trading as Taystee Bar B Q, Appellees.

Gen. No. 42,367.

Opinion filed May 10, 1943.

DAVID F. SILVERZWEIG, of Chicago, for appellant.

SAMUEL H. SOLOMON, of Chicago, for appellees.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The material facts in this case can hardly be said to be in dispute. Defendants conduct a business known as the Taystee Bar B Q at 4638 Broadway. Plaintiff

conducts a tavern under the name of the Pink Poodle at 502 South State street. In the course of their business defendants purchased meat from a butcher named William Kastel, who employed a collector named Williamson. About June 15, 1941, Kastel handed to Williamson for collection defendants' bill. He called at defendants' place of business for payment. The defendants paid to the collector part of the bill in cash and for the remainder of it gave him eleven checks dated on various dates from June 16 to 28, 1941, and delivered by defendants in the first instance to divers employees in payment of their wages. Each employee indorsed the check which was payable to him or her and handed it back to defendants and from defendants received cash in payment. These checks, thus indorsed, amounted in the aggregate to $172.30. Williamson took the checks and cash and visited other customers. He took drinks from time to time and became intoxicated. He drove a truck and was involved in an accident, which damaged it. Ill luck seemed to follow him. He met a woman. They went together to a hotel for the evening. When he awoke in the morning his guest, his money and his pants had disappeared. He procured from a bell boy the necessary but ill-fitting garment and went to plaintiff's tavern, where he arrived at about 2 o'clock in the afternoon. He recited his ill luck to plaintiff, who at his request cashed some of the checks which Williamson there indorsed. Some days thereafter Williamson returned, and the bartender, by direction of plaintiff, cashed the remainder. Plaintiff explains that he had known Williamson for some time and supposed him to be the owner of the checks and of the meat business. Williamson was not the owner of the checks. He had possession but not title. He did not have authority to indorse. When plaintiff presented the checks at the bank, payment was refused by direction of the defendant makers.

Plaintiff sued on the theory that he was a bona fide holder for value, in good faith. The defendants denied this. Plaintiff questioned the right of defendants to interpose the defense of defective title, which he asserts could only be raised by a third party. A jury was waived; the issues tried by the court. There was a finding for defendants and plaintiff appeals.

Plaintiff's brief expresses doubt whether the Negotiable Instruments Act is applicable. We hold several sections of it (namely, sections 52–59 [Jones Ill. Stats. Ann. 89.072–89.079]) are applicable and that section 59 is controlling and decisive. It is:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

In *Balch v. English*, 261 Ill. App. 29, the makers of notes and bonds undertook to interpose the defense that the instruments were the property of a third party from whose possession the notes and bonds had been stolen. The court said that defense might be available in a suit to which the third person (a candy company) was a party, but "cannot be relied upon by the defendants in the instant case."

In *Woodlawn Trust & Savings Bank v. Donaho*, 239 Ill. App. 158, the third division of this court, in a case where plaintiff had taken title through a forged indorsement, analyzing section 59, pointed out that the last sentence constitutes an exception to an exception and held that since the defendant was liable on the instrument prior to the acquisition of the defective title the defense could not be interposed. See also *Sherman State Bank v. Smith*, 244 Ill. App. 171.

Consistent with these cases is *Clarke v. Newton,* 235 Ill. 530. Defendants rely on *Bell v. McDonald,* 308 Ill. 329. That case is distinguishable by the fact that the fraud there was in obtaining the execution of the note sued on and the exception to the exception in section 59 was therefore not applicable. As a matter of fact, this section was not there considered. Moreover, there was evidence of actual notice in that case.

Brannan's Negotiable Instruments Law, 6th ed., section 59, page 717 points out that the last sentence of section 59 is omitted from the English Act, B. E. A. S. 30 (2) at page 741 the author says:

"In *Parsons v. Utica Cement Co.,* 80 Conn. 58, 66 Atl. 1024, the court appears to have overlooked the last sentence to § 59 and held that where the plaintiff acquired the instrument from a prior holder, who had obtained it fraudulently and without consideration from the rightful owner, the burden was on the plaintiff to prove that he was a holder in due course, although defendant, the maker, had no defense of its own to the instrument. The last clause of § 59 was intended to codify the contrary case of *Kinney v. Kruse,* 28 Wis. 183. See Crawford Negotiable Instruments Law, 3d Ed. 79 n. (c), 4th Ed. 117.

"After the second trial of *Parsons v. Utica Cement Co.,* 82 Conn. 333, 73 Atl. 785, the court discovered that the instrument had been made and delivered prior to the taking effect of the Negotiable Instruments Law, and deciding the case according to the pre-existing law, the court declined to follow *Kinney v. Kruse,* saying that it is opposed to the strong current of authority. *Sed quaere* unless the rightful owner has notified the maker not to pay. See *Prouty v. Roberts,* 6 Cush. 19; *Carrier v. Sears,* 4 Allen. 336; *Merchants Exch. Bank v. N. B. Savings Institution,* 33 N. J. L. 170; *Brown v. Penfield,* 36 N. Y. 473; *Houghton v. McAuliffe,* 26 How. Pr. 270."

Applying the last sentence of section 59 of the statute to the facts of this case, we hold the burden of proof is here cast on defendants to overcome the prima facie presumption in favor of the plaintiff. Furthermore, on the facts, we also hold there is no proof sufficient to overcome that presumption. Williamson testified for defendants. He did not deny he received cash from plaintiff for the face amount of the checks. His testimony is to the effect that he became so drunk he did not know what happened. His evidence on this point is obviously untrue in so far as the negotiation of these checks is concerned. The indorsements of the checks are in his own handwriting, and these indorsements do not indicate incompetency of the writer at the time he wrote. Indeed, on one of the checks Williamson also wrote his Chicago address. One of the checks was dated June 18, another June 28, 1941. The other checks were dated June 16, 1941. The evidence indicates it was on the latter date Williamson received the checks and began his drunken spree. There is no evidence that his incompetency continued up to June 28, 1941. On the contrary, the evidence all shows he had recovered before that time. On the other hand, the evidence shows that the checks were not all cashed at the same time. We hold as a matter of fact and law, under the evidence plaintiff is entitled to recover, and that under the facts, as a matter of law, defendants are without standing to question plaintiff's title. Brannan on Negotiable Instruments, 6th ed., § 59, p. 471; *Kinney v. Kruse,* 28 Wis. 183; *Parsons v. Utica Cement Co.,* 82 Conn. 333, 73 Atl. 785; Daniel on Negotiable Instruments, vol. 2, § 955, p. 1030; *Farmers' State Bank of Dickinson v. Koffler,* 60 N. D. 11, 232 N. W. 307, and annotation thereof 70 A. L. R. 1228.

The judgment will be reversed with a finding of fact that plaintiff is the owner of these checks and that there is due to him the sum of $172.30. The judgment

will be reversed and the cause remanded to the trial court with directions to enter judgment in favor of plaintiff for that amount.

*Reversed and remanded with directions.*

O'Connor and McSurely, JJ., concur.