<hr/>

THE STANDARD CEMENT COMPANY *vs.* THE WINDHAM
NATIONAL BANK ET AL.

First Judicial District, Hartford, March Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

The plaintiff, a manufacturing company, executed its valid note payable four months after date to the order of the defendant manufacturing company, and delivered it to *P*, the treasurer of the latter, who upon the following day indorsed the name of the payee in blank and his own name as treasurer, and presented the note to the Windham National Bank which discounted it at seven per cent. Shortly afterwards *P* appropriated the proceeds to his own use and fled the State. In an action of interpleader to determine to whom the plaintiff should make payment, the defendant manufacturing company claimed to own the note, alleging that *P* had no authority to indorse and negotiate it, and that the bank knew this when it discounted it. The bank claimed to own the note, alleging that it bought it in the usual and ordinary course of business, without notice of any infirmity in the title; and the parties were at issue upon these questions. The trial court found that *P* had no authority to indorse and

Standard Cement Co. *v.* Windham Nat. Bank et al.

negotiate the note, and that at the time of discount the bank had sufficient knowledge to put it upon inquiry as to the propriety of discounting it, and that it was chargeable with *laches* in not making such inquiry. The record, in compliance with the statute, contained the subordinate facts found by the court upon which these conclusions were based. *Held:* —

1. That the question whether the conclusions drawn by the trial court from the facts found by it as a basis therefor, were unwarranted in law, was reviewable by this court upon appeal.

2. That the facts found by the trial court did not support its conclusions that *P* had no authority to indorse and negotiate the note and that the bank had sufficient knowledge to charge it with *laches* in not making further inquiry.

The treasurer of a manufacturing corporation, under our statute, may be and frequently is the officer authorized to indorse and negotiate notes belonging to the corporation. When such treasurer presents a note so indorsed for discount, he represents that he has authority to negotiate the note, and if he is known to the party discounting to be such treasurer, that party is ordinarily justified in accepting the representation as true; and in a suit upon such note by the purchaser, the indorsement and representation by the treasurer being proved and no evidence showing an actual want of authority being offered, a conclusion that the treasurer was not authorized to make the indorsement is error.

When negotiable paper is bought before maturity, for value, in the ordinary course of business, the title of the purchaser cannot be impeached by proof of fraud unknown to him at the time. The law does not presume knowledge from the fact of fraud. Knowledge of facts which impeach the transaction must be proved.

Facts found from the evidence are not reviewable by this court.

Finding a material fact without any evidence to support it is error in law.

In determining the meaning of language used in a finding, it may be read in the light of the certified evidence appearing in the record.

When the finding gives an incomplete recital of the circumstances under which a ruling upon evidence is made, and the stenographer's transcript of those circumstances, duly certified, appears in the record, the finding and the transcript may be read together for the purpose of ascertaining the precise nature of the ruling made.

Argued March 9th—decided March 30th, 1899.

SUIT for an injunction and for an order requiring the defendants to interplead respecting their claims to the amount of a promissory note made by the plaintiff, brought to the Superior Court in Hartford County and tried to the court, *Elmer, J.;* facts found and judgment rendered for the Utica

Cement Manufacturing Company, and appeal by the Windham National Bank for alleged errors in the rulings and findings of the court. *Error, judgment set aside and cause remanded.*

The note in question was as follows:—

" $1,660.   HARTFORD, CT., Oct. 20, 1887.

" Four months after date we promise to pay to the order of Utica Cement Manufacturing Co., sixteen hundred and sixty dollars at Charter Oak National Bank.  Value received.

"STANDARD CEMENT CO., J. H. VERMYLE, *Prest.*,

"R. W. FARMER, *Treas.*"

The note was indorsed on the back as follows: " Utica Cement Mfg. Co., J. S. Parsons, *Treas.*"

The note was valid and given to the payee for money loaned.   J. S. Parsons was treasurer of the payee, and made the indorsement.

On October 21st, 1887, Parsons presented the note, so indorsed, to the Windham National Bank for discount.   The bank then bought the note, paying to Parsons its face value, less a discount, found to be seven per cent.   The proceeds were paid to Parsons in currency, who appropriated the same to his own use and fled the State as a fugitive from justice. These facts are alleged in and admitted by the pleadings. Additional facts alleged and denied are as follows:—

The Windham National Bank alleged that it discounted said note "in its regular and usual course of business, with no notice of any infirmity about said note, at the usual rates of discount, and paid the amount of said note, less said discount, to said treasurer of the Utica Cement Manufacturing Company."

The Utica Cement Manufacturing Company alleged that treasurer Parsons took said note from its assets without any authority from it, indorsed the same without any authority from it, and without any authority from it negotiated and delivered said note, indorsed as aforesaid, to the said bank for discount; that said bank and its officers at the time of discount knew that Parsons had no authority from said man-

Standard Cement Co. *v.* Windham Nat. Bank et al.

ufacturing company to take said note from its assets, and to indorse or negotiate the same; that the business of said manufacturing company was that of manufacturing and selling cement; that it had never procured any notes to be discounted in this State; that the discounting and transfer of said note was not incidental and appropriate to its business of manufacturing and selling cement, and was out of its usual and ordinary course of business.

Upon the issues formed by respective denials of these allegations, the trial was had.

No evidence whatever was offered in respect to the authority of Parsons as treasurer to indorse the note in question. The conclusion of the court in respect to his authority as treasurer is drawn from the admitted facts.

Upon judgment being rendered for the Utica Cement Manufacturing Company, the Windham National Bank filed its request for a finding accompanied by a draft of a proposed finding.*

* " 1. The appellant is, and for a long time before the 20th day of October, 1897, was, a duly organized bank under the laws of the United States, doing business at Willimantic, in the town and county of Windham, State of Connecticut. On the 20th day of October, 1887, the plaintiff, the Standard Cement Company, executed and delivered to the treasurer of the Utica Cement Manufacturing Company, one J. S. Parsons, a note in the following words and figures, viz.: (already printed). 2. On the 21st day of October, 1887, the treasurer of said Utica Cement Manufacturing Company, J. S. Parsons, presented said note to the appellant, the Windham National Bank, for discount, with the indorsement on the back thereof as follows, viz.: 'Utica Cement Mfg. Co., J. S. Parsons, *Treas.*,' and on the 21st day of October, 1887, the appellant, the Windham National Bank, in its regular and usual course of business, with no notice of any infirmity about said note, discounted said note at the usual rates of discount, and paid the amount of said note, less said discount, to said treasurer of the Utica Cement Manufacturing Company. 3. A few days before said note became due, the appellant, the Windham National Bank, as is the usual banking custom relative to such notes, sent the same to the Charter Oak National Bank for collection and credit to the account of the appellant, the Windham National Bank. Upon the 23d day of February, 1888, when said note became due, the same was presented for payment, payment was refused, and said note was duly protested. 4. Upon the trial of this cause the Utica Cement Manufacturing Company claimed that its said treasurer, James S. Parsons, had

The court made the following finding of facts : —
"1. The appellant, the Windham National Bank, is, and for a

no authority as treasurer to negotiate and procure the discount of said note, and that the Windham National Bank well knew this, but nevertheless discounted said note at the request and upon the indorsement of said Parsons and paid over the avails of said discount to him, said Parsons, who appropriated the same to his own use. 5. To sustain this claim, the Utica Cement Manufacturing Company offered evidence to prove that Mr. Parsons caused this note to be made and issued to himself without the knowledge of the directors of said Utica Cement Company, with the intention and for the purpose of appropriating the proceeds to his own use, and offered the testimony of Burton Hills, assistant treasurer and bookkeeper of said Utica Cement Manufacturing Company at the date of said note, as to the conversation between Parsons and himself relative to the making said note and the purpose of its making, and the instructions of Parsons concerning the note. All this evidence was offered without evidence that the Windham Bank had any knowledge or notice of these alleged facts at the time they discounted said note. To the admission of this evidence the appellant objected, but the court overruled the objection and admitted the evidence, to which ruling the appellant duly excepted. 6. The Utica Cement Manufacturing Company, for the purpose of showing that the proceeds of this note were embezzled by said Parsons, and as its sole evidence thereof, offered the oral evidence of Mr. Samuel E. Elmore, president of said Utica Cement Company, whose official connection with said company did not commence until 1888, that the books of said company did not show that said company ever received the proceeds of said note. To the admission of this oral evidence of the contents of said books the appellant objected, and upon examination of that objection it appeared: (1) that the books were in existence; (2) that they were without the jurisdiction of the court; (3) that they were in Chicago, Ill.; (4) that no attempt had been made to get them, or get a copy of them by deposition or otherwise, and that there had been no examination for the purpose of seeing what the books showed, and that there was no difficulty in getting access to them. The objection was then insisted upon, but the evidence was admitted (the appellants duly excepting) and the witness testified as follows: 'The books do not show that the company ever received any proceeds of this note, so far as I have been able to find.' 7. Further, upon the claim that the Windham National Bank knew that the act of Parsons in procuring the discount was fraudulent and for his own benefit, and not that of the company of which he was treasurer, the Utica Cement Company offered the evidence of one Skinner, that financial irregularities of Mr Parsons in connection with the Continental Life Insurance Company, an institution of which Parsons was president, were a matter of public notoriety through the newspapers just before the time of the date of this note. To the admission of this evidence the appellant objected, but it

Standard Cement Co. *v.* Windham Nat. Bank et al.

long time before the 20th day of October, 1897, was, a duly organized bank under the laws of the United States, doing

---

was admitted and the appellant duly excepted. 8. It further appeared that the cashier of the Windham National Bank was well acquainted with Mr. Parsons; that Mr. Parsons was not a depositor in his bank, but that he did business with him as president of the Continental Life Insurance Company; that he knew the insurance company was financially embarrassed, but he believed it was temporary and he believed that company to be solvent; that he knew the Utica Cement Company was solvent; that he made no inquiry as to what use was to be made of the funds and did not know what use was made of them; that he discounted the note on his own judgment and that of Mr. Smith, the president of the bank, at the usual rate of discount to persons not regular customers; that he paid the proceeds of the note to Parsons in currency instead of draft or check, and upon these facts, together with that evidence hereinbefore stated as evidence, to the admission of which the appellant objected, the Utica Cement Company claimed and asked the court to hold as a matter of law that the bank was chargeable with knowledge of fraud on the part of Mr. Parsons, with his want of authority to indorse and procure the discount of the note, and with an intention to appropriate the avails of said note to his own individual use. This claim the court sustained, although the appellant opposed the same. 9. The Utica Cement Company was a body corporate, duly organized and doing business as a manufacturing company under the laws of this State, having a board of directors, a president, treasurer, and other officers, and there was no evidence that the corporation by vote, or otherwise, had forbidden its treasurer to negotiate and cause to be discounted the notes of said company, and thereupon the appellant claimed as matter of law that the treasurer, as the depositary of the negotiable securities of the company, could, under the circumstances, transfer this note by his indorsement, and the bank, if, in other respects, an innocent holder before maturity for a valuable consideration, would be protected. But the court did not sustain this claim, and held that the law was otherwise, and that the treasurer had no power to transfer the note by his indorsement. (Here follows a transcript of all the evidence given upon the trial.) The appellant claimed and asked the court to hold, as matter of law, that upon this evidence presumptive notice could not be imputed to the bank of any infirmity in said note. The court did not allow said claim, but held the law to be otherwise, and held that upon said evidence presumptive notice was to be imputed by law to the bank of infirmities in the inception and execution, negotiation and transfer of such note, fatal to its claim to the money in controversy.

"Statement of the questions of law the appellant desires to have reviewed. 1. The court erred in admitting the evidence of Burton Hills as to circumstances of making and issuing note. 2. The court erred in admitting testimony of Samuel E. Elmore as to contents of books. 3. The

business at Willimantic, in the town of Windham, in the State of Connecticut. 2. On October 20th, 1887, the plaintiff was indebted to the defendant, the Utica Cement Manufacturing Company, in the sum of sixteen hundred and sixty dollars on a loan, and as evidence thereof gave to said company its promissory note in words and figures as follows: (already printed). 3. On October 21st, 1887, the day after the execution of said note, James S. Parsons, then the treasurer of said company, took the said note to the defendant, the Windham National Bank, and presented the same to Henry C. Lathrop, the cashier, for discount, and then and there indorsed the note as follows: ' Utica Cement Mfg. Company, by James S. Parsons, Treas.' 4. This action of said Parsons in indorsing and negotiating said note in the manner aforesaid, was without the knowledge and authority of the said company. 5. On the 21st day of October, 1887, the said Henry C. Lathrop, cashier of the said bank, discounted the note at the rate of seven per cent., which, it appeared from the evidence, was more than the regular or ordinary rate for business paper; and at the request of said Parsons paid the avails of said note to him in currency. 6. Parsons appropriated the money received upon said note to his own use; and in consequence of unlawful and criminal transactions connected with the management of the Continental Life Insurance Company, of which he was the president, fled from the State as a fugitive from justice. He never paid the proceeds of said note, nor any part thereof, to the defendant, the Utica Cement Manufacturing Company, nor did said company ever receive the whole or any part of the same. 7. At or about the time said note became due, the Windham National Bank presented the same to the Charter Oak National Bank for collection and payment, which was refused upon notice given to said bank by

court erred in admitting testimony of Skinner as to public notoriety of irregularities of Parsons. 4. The court erred in holding upon the evidence that the treasurer could not transfer this note. 5. The court erred in holding upon this evidence that the law imputed presumptive notice to the bank of fatal infirmities in the inception, execution, and transfer of said note."

the Utica Cement Manufacturing Company not to pay the same to any one except the latter, claiming that said note was its property, and that it had never authorized any indorsement or transfer of the same, and demanded payment of the note as its property. The said bank returned said note protested. On the following day, 24th of February, 1888, this suit was brought. 8. The Utica Cement Manufacturing Company was organized for the purpose of manufacturing and selling cement, and that was its sole business. Prior to the time when said note was discounted at the Windham National Bank, it had never had any notes discounted in this State, and the discount of said note at the said bank was out of its ordinary and usual course of business; which was known to said Lathrop and to said bank at the time of the presentation of the same. 9. On said 21st day of October, 1887, Parsons was president of the Continental Life Insurance Company, and had held that position some years previous thereto. He was also a director of the Standard Cement Company, the plaintiff, and treasurer of the Utica Cement Manufacturing Company. As president of the said insurance company he had previously had financial transactions with the Windham National Bank, and kept an account with said bank, and had been a borrower of money of said bank for said insurance company. The latter company, through its president, Parsons, had a deposit and account at said bank when said note was discounted. 10. It was the usual custom of the said bank to charge its regular customers, for the discount of notes and business paper, 6 per cent. as the rate of discount. In the discount of the note aforesaid the rate was charged at 7 per cent. To the admission of the evidence as to the rate of discount, heretofore referred to in this finding, the defendant, the Windham National Bank, objected, but the objection was overruled and the evidence admitted. 11. For some time before said note was discounted, the Continental Life Insurance Company aforesaid, of which the said Parsons was president, had become and was then embarrassed financially, which was known to said Lathrop, from Parsons, before the discount of said note. Soon afterwards it became insolvent and was

placed in the hands of receivers. 12. At the time Parsons procured said note to be discounted it was publicly known that he was charged with unlawful transactions connected with the management of said company; and the said Lathrop was possessed of this knowledge when he discounted the said note for the said Windham National Bank. The defendant, the Windham National Bank, objected to the evidence sustaining this fact, but the objection was overruled and the evidence admitted. 13. The said Lathrop and the said Parsons lived near each other in Willimantic, and they and their families were intimate and friendly in their relations; and said Lathrop knew his, Parsons', financial condition, and was well aware of the financial troubles of the insurance company of which he was president, and had known of this state of things some time prior to the discount of this note. Lathrop at this time was one of the stockholders of said Utica Cement Manufacturing Company, as was also Thomas Ramsdell, a director of said bank. 14. The said Continental Life Insurance Company held a mortgage on the property of the said Utica Cement Manufacturing Company, and previous to the discounting of said note organized said cement company by the reason of the ownership of said mortgage, and became a holder of its stock in place of the mortgage, and so held it on October 21st, 1887, which said Lathrop knew at the time he discounted said note. 15. I find, by the evidence, that it was the custom of said Windham National Bank, in discounting notes of this kind, to give a draft or check for its proceeds, and that the payment to the said Parsons of the currency upon this note was unusual. 16. The cashier, said Lathrop, made no inquiry as to the reasons Parsons had for the discounting the note; and why he asked to have the proceeds paid in currency instead of check or draft, as was the usual custom of said bank. I find that said cashier, at the time he discounted said note, had sufficient knowledge of Parsons and his unlawful transactions in the management of said Continental Life Insurance Company to put him upon inquiry as to the propriety of discounting said note, and that said bank and its cashier are chargeable with *laches* in not

making such inquiry. 17. Upon the trial of the case the Utica Cement Manufacturing Company, to sustain its claim that the said James S. Parsons had no authority from said company, as treasurer, to negotiate the discount of said note and that the Windham National Bank knew this when it discounted the note and paid over the proceeds to said Parsons, who appropriated the same to his own use, as a part of the evidence for this purpose, introduced the testimony of Burton S. Hills, assistant treasurer and bookkeeper of the said Utica Cement Manufacturing Company at the date of said note, as to the conversation between Parsons and himself relative to the making of said note and its purpose and the instructions to Parsons as to the use of said note. To the admission of this evidence the appellant objected, upon the claim that the Windham National Bank had no notice nor knowledge of these alleged facts at the time it discounted said note. The court overruled the objection and admitted the evidence, to which ruling the appellant excepted. 18. The Utica Cement Manufacturing Company, as evidence showing that the proceeds of said note were embezzled by the said Parsons and never paid to said company, offered the testimony of Samuel E. Elmore, president of said cement company, whose official connection dated from 1888, that the books, which he had examined, did not show that said company had ever received the proceeds of said note, which testimony appears in full in the evidence. To the admission of this testimony the defendant, the Windham National Bank, objected, which objection was overruled and the evidence admitted. I find that it appears from the evidence that the books were in existence, but that they were without the jurisdiction of the court, and as far as the evidence disclosed were in the city of Chicago, in the State of Illinois; that no effort had been made to get possession of them or a copy of the same. 19. The defendant, the Utica Cement Manufacturing Company, to show that the financial irregularities and fraudulent transactions of Parsons in connection with the insurance company, of which he was president, was known to the said Lathrop, cashier of said bank, the testimony of one Skinner was offered to show that

his course just before the discount of said note was a matter
of public notoriety, through the newspapers and other sources.
To the admission of this evidence the appellant objected; it
was admitted and the appellant duly excepted.   20.  Upon the
trial the defendant, the said Windham National Bank, claimed
that it had discounted the note in question in the regular
course of business, with no notice of any infirmity connected
therewith, and at the regular rate of discount to others than
their regular customers; that the cashier, Lathrop, believed
the said insurance company to be solvent, as also was the
Utica Cement Manufacturing Company, and that he acted in
good faith in this transaction with Parsons; that, therefore,
under the circumstances, the said Parsons, treasurer of the
Utica Cement Manufacturing Company, had properly trans-
ferred, and the said bank had properly discounted said note,
and the said bank was an innocent holder for value and should
be protected.   The bank further claimed that as said Utica
Cement Manufacturing Company was a body corporate with
directors and other officers usually connected with such com-
panies, and as there was no evidence that said company, by
vote or in any other manner, had forbidden its treasurer to
negotiate and discount the aforesaid note in the manner here-
tofore described, therefore, as a matter of law, the said treas-
urer was justified in the indorsement of said note to said bank
in the manner heretofore described.   The court did not sus-
tain these claims, but upon the evidence as appears of record,
rendered judgment for the defendant, the Utica Cement Man-
ufacturing Company, and ordered the said Windham National
Bank to deliver to said Utica Cement Manufacturing Com-
pany the note of sixteen hundred and sixty dollars described
in said complaint."

The bank filed a motion to correct the finding, which was
denied; also sundry exceptions to the finding, including ex-
ceptions to the facts as stated in paragraphs 12, 15 to 19 in-
clusive, of the finding as made by the court; also exceptions
to the refusal of the court to find as requested in paragraphs
5 to 9 inclusive of the bank's request for a finding.

The bank claimed that all the evidence in the case was ma-

terial under each of its exceptions, and at its request all of the evidence was certified by the court.

The appeal alleged error of the trial court: (1) in admitting the evidence of Burton Hills as to the circumstances of making and issuing the note in question; (2) in admitting the testimony of Samuel E. Elmore as to the contents of the books; (3) in admitting the testimony of Skinner as to the public notoriety of irregularities of Parsons; (4) in holding, upon the evidence, that the treasurer could not transfer this note; (5) in holding, upon the evidence, that the law imputed presumptive notice to the bank of fatal infirmities in the inception, execution, and transfer of said note; (6) in finding as set forth in paragraph 12 of the finding of facts; (7) in finding as set forth in paragraph 15 of the finding of facts; (8) in finding as set forth in paragraph 16 of the finding of facts; (9) in finding as set forth in paragraph 17 of the finding of facts; (10) in finding as set forth in paragraph 18 of the finding of facts; (11) in finding as set forth in paragraph 19 of the finding of facts; (12) in refusing to find as requested in paragraphs 5 to 9 inclusive of the defendant's request for a finding, as on file; (13) in refusing to hold, upon all the evidence, that presumptive notice could not be imputed to this defendant of any infirmity in said note.

*William C. Case* and *Hugh M. Alcorn*, for the appellant (Windham National Bank).

*John R. Buck*, for the appellee (Utica Cement Manufacturing Company).

HAMERSLEY, J. The first three assignments of error relate to the admission of testimony.

The admission of the testimony of Burton S. Hills is error. The recital by the judge in the finding of the existing conditions which determined its admissibility, is incomplete, but the record contains a full statement of those conditions, certified by the judge, and the recital in the finding may be read in the light of this statement. *Thresher* v. *Dyer*, 69 **Conn.**

404, 409; *Hoadley* v. *Savings Bank of Danbury*, 71 Conn. 599, 612. So read, it appears that the testimony of Hills was admitted upon the statement of the Utica Company's counsel, that he expected to prove by other evidence the bank's knowledge of the facts testified to. Without such knowledge the evidence was inadmissible. He failed to bring the knowledge to the bank, and the bank for this reason moved to strike out the testimony, but the court did not grant the motion and the testimony was retained. Apparently the facts shown were immaterial, even if brought to the knowledge of the bank.

The testimony of Samuel E. Elmore is immaterial. It was offered and received for the purpose of showing that Parsons, after having sold the note to the plaintiff, embezzled the proceeds. The fact that Parsons appropriated the proceeds to his own use and fled from justice, and has never paid to the Utica Company any part of the same, is admitted by the pleadings. This is all that could be claimed from Elmore's testimony.

In respect to the testimony of C. W. Skinner, the Utica Company claimed that fraudulent transactions of Parsons, in connection with the insurance company of which he was president, were known to the bank at the time it discounted the note, and for this purpose offered Skinner to show that such fraudulent transactions were, just before the discount, a matter of public notoriety. We incline to think that such evidence might have been admissible; but the question is unimportant, because Skinner did not give such evidence, and his evidence as actually given could not properly have injured the bank.

The 9th, 10th and 11th assignments of error relate to the same questions of evidence, and require no separate consideration.

The 4th and 5th assignments allege error in finding facts from the evidence. Such matters are not reviewable by this court. Printing certified evidence for such purpose is a useless expense. *Thresher* v. *Dyer*, *supra*.

The 6th, 7th and 8th assignments allege error in finding material facts in the absence of any supporting evidence.

Finding a material fact without evidence, that is, a fact unsupported either by some direct testimony or by some inference which a court may properly draw from the testimony given, conduct of parties or witnesses, or other circumstances appearing in the trial,—is an error in law.  Such error cannot be presented in this court unless the whole evidence is certified, or the portion of evidence certified is accompanied by a finding of the court, or a stipulation of the parties, that it contains all the evidence bearing upon the question.  In this case the whole evidence was properly certified in connection with these assignments.

The error alleged as to paragraph 12 of the finding is, that the court here finds that the bank, through Lathrop, knew at the time of discount that Parsons was charged with unlawful transactions connected with the management of the life insurance company of which he was president.  If the word "unlawful" is here used in the sense of dishonest or criminal, the fact found is unsupported by the evidence, and, if material, we should be obliged for this reason to grant a new trial, or to treat the finding as not containing this fact; but the inspection of the testimony which convinces us that a finding of knowledge of dishonest or criminal transactions is unsupported by evidence, also leads us to think the judge used the words "unlawful transactions" as indicating only irregularities of management in connection with financial troubles of the company.  With this meaning, the fact found is not wholly unsupported by the evidence.

The same view applies to similar language used in paragraph 16 of the finding.

The fact objected to in paragraph 15 is not sufficiently material to justify any consideration of the error claimed.

The 12th assignment is substantially disposed of in dealing with the other errors.

The 13th assignment is defective in form.  On its face it predicates error in deciding a question of law upon all the evidence.  This cannot be done.  But viewing this assignment in connection with the request for a finding, especially with the claims of law stated in paragraphs 8 and 9 of the

request, we think the assignment sufficiently claims error in the conclusions drawn by the court from the facts found. This was the gist of the case as tried; there was substantially no conflicting evidence. The main question argued before us was, do the facts lawfully found by the trial court support the conclusion that the bank had notice of fraud on the part of Parsons in indorsing and discounting the note? And in passing on this question we may review the lawfulness of conclusions drawn from subordinate facts found, although the trial court may call such conclusions facts found from the evidence. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159, 179.

The trial court finds, in paragraph 4, that the action of Parsons in indorsing and negotiating said note was without the knowledge and authority of the Utica Company. This is not a finding of fact from the evidence. There is no testimony upon this subject. It is an inference drawn from the facts admitted by the pleadings, and as such is erroneous. The Utica Company, by virtue of the powers given to all private corporations (General Statutes, § 1906), had authority to acquire this note; indeed its lawful ownership of the note is admitted and made the basis of its claim. It had authority to appoint a treasurer. The treasurer of a manufacturing company is frequently, if not ordinarily, the custodian of notes so acquired, and the officer authorized to make the indorsement necessary for their sale or transfer. When such treasurer, having in his possession a note so indorsed, presents it for discount, he represents that he has authority as treasurer to indorse and negotiate the note; and if he is personally known to the person discounting such note to be such treasurer, that person is ordinarily justified in accepting such representation as proof of authority. Such purchaser, in a suit upon the note, having proved the indorsement and representation of authority by the treasurer, is bound to go no further, and the authority to make the indorsement follows as a legal conclusion, unless other evidence shows an actual want of authority. In this case there is no other evi-

dence; indeed the brief of the Utica Company does not claim that Parsons as treasurer had no authority to indorse.

The trial court further finds, in paragraph 16, that the facts within the knowledge of the cashier of the bank at the time of discount were sufficient to put him upon inquiry as to the propriety of discounting said note, and that the bank and its cashier are chargeable with *laches* in not making such inquiry. This also was a conclusion from the facts found, and is open to review.

The facts and circumstances attending the discount, as found by the court, are these: The Standard Cement Company, maker of the note, was a New Jersey corporation, having an office at Hartford. The Utica Cement Manufacturing Company, payee of the note, was a Connecticut corporation located at Hartford. There is no claim that either of these corporations was not then solvent. The Windham National Bank, purchaser of the note, was a national banking association located at Willimantic. The Continental Life Insurance Company was a Connecticut corporation located at Hartford, carrying on its business of life insurance, though in financial difficulty. Parsons was treasurer of the Utica Company, a director of the Standard Company, and president of the insurance company. Lathrop, cashier of the bank, and one Ramsdell, a director of the bank, were stockholders of the Utica Company. The insurance company had transacted business with the bank and then had a deposit and account there. Lathrop and Parsons lived near each other on friendly relations. The usual rate of discount for regular customers of the bank was 6 per cent. It does not appear that Parsons, personally, or the Utica Company, kept an account with the bank. The discount charged was 7 per cent. Usually the proceeds of a discount are paid by a draft. Parsons received the proceeds in currency. Lathrop did not ask Parsons his reasons for discounting the note, nor why he wanted currency.

The purchase by the bank under such circumstances was valid. No equities in favor of the Utica Company, no fraud as between that company and its treasurer, can affect the legal

title so acquired, unless the bank had notice; and notice in this connection means knowledge. Where negotiable paper is bought before maturity, for value, in the ordinary course of business, the title of the purchaser may be impeached by proof of fraud known to him at the time. But the law does not presume knowledge from the fact of fraud. Proof that he bought for value, according to the custom and usage of commercial transactions, is evidence that he bought without notice, and sufficient, unless outweighed by other evidence establishing his knowledge. *Arnold* v. *Lane*, 71 Conn. 61, 63.

The facts found by the court bearing upon notice or knowl edge of the fraud, are these: Lathrop, cashier of the bank, knew that the Utica Company had never before had notes discounted in this State; that the life insurance company had formerly held a mortgage on property of the Utica Company, and by reason of the ownership of the mortgage had organized the company and become an owner of its stock in place of the mortgage; that the insurance company was financially embarrassed, and that Parsons was charged with irregularities in connection with the financial management of the company; said cashier also knew Parsons' personal financial condition, but it is not found that he knew it to be an embarrassed one.

There is little logical connection between these facts and the fact that Lathrop knew that his friend and neighbor Parsons, when presenting the note of the Utica Company for discount, was contemplating the embezzlement of the funds of that company committed to his charge as treasurer. Such a conclusion cannot be drawn from these facts, considered by themselves or in connection with the circumstances attending the discount, by any process of reasoning legally permissible.

It is evident that the trial court did not draw its conclusion merely from these facts, but that its conclusion was induced through an erroneous view of the law in connection with the facts brought to light and to the knowledge of Lathrop subsequent to the discount. These facts are: After the discount Parsons appropriated the proceeds to his own use, and in consequence of criminal transactions in connection with the in-

surance company, fled the State. The insurance company became insolvent and passed into the hands of receivers.

We do not question the power of the trial court to find from these facts, in connection with the other facts, fraud on the part of Parsons. The circumstances attending the discount, viewed in the light of subsequent events, fairly support the claim that Parsons discounted the note with intent to embezzle the proceeds, and took his pay in currency to provide himself with funds for a contemplated flight from the consequences of his criminal conduct in connection with the insurance company. But at the time of discount Lathrop could have no knowledge of facts that had not then happened, and such facts cannot be used to give color to a knowledge anterior to their existence.

The bank, therefore, having no knowledge of the fraud of Parsons, acquired a title to the note purchased which cannot be impeached by that fraud. Had Parsons stolen a bank note and transferred it to the bank for a valuable consideration paid in good faith, the title of the bank to that note would have been perfect. The note in suit comes under a similar rule, and with stronger reason; for the Utica Company, rather than an innocent purchaser, ought to bear the loss occasioned by its treasurer's official dishonesty. *Brush* v. *Scribner*, 11 Conn. 387, 391, 399.

The title of the bank must prevail, unless it had knowledge of facts which of themselves impeach the transaction—in this case fraud—and not facts which only tend to prove fraud or to excite suspicion. *Credit Co.* v. *Howe Machine Co.*, 54 Conn. 357, 384. Apparently the trial court was influenced to some extent by the doctrine in *Gill* v. *Cubitt*, 3 Barn. & Cr. 466. That doctrine was approved in *Hall* v. *Hale*, 8 Conn. 336, 340, but the case has been overruled in *Brush* v. *Scribner* and *Credit Co.* v. *Howe Machine Co.*, *supra*. No vestige of the doctrine remains. The trial court therefore erred in holding that the facts known to Lathrop at the time of discount were sufficient to put him on inquiry as to the propriety of discounting the note, and that he is chargeable with *laches* in not making such inquiry. The only legal judgment, upon the facts lawfully

found by the trial court, is one ordering the Standard Cement Company to pay the amount due on the note to the Windham National Bank, and the court below erred in not rendering such a judgment.

There is error, the judgment of the Superior Court is set aside and the cause remanded that judgment may be entered up according to law.

In this opinion the other judges concurred.