BERTHA SACKS *vs.* ISIDORE SHEIMAN.

Third Judicial District, New Haven, June Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The trial court found, contrary to the plaintiff's testimony, that the promissory note upon which the present action was brought, had been deposited in a bank for collection by the payee and not by the plaintiff, who claimed to be a holder in due course,

Sacks *v.* Sheiman.

and that the note was not delivered to the plaintiff until after it had been protested for nonpayment. *Held* that these findings were justified by the defendant's evidence, and by the plaintiff's delay of almost four years in attempting to secure payment from the defendant which, in itself, was evidence that she did not have a valid claim.

Where a note bears four names—those of the maker and three indorsers—the fact that the collecting bank mailed three notices of protest for nonpayment does not conclusively establish that one was sent to any given party.

That an indorser's name appears upon a note at the time of trial does not prove when it was put there.

Many presumptions raised by the Negotiable Instruments Law in favor of a holder who brings an action upon a note are rebuttable and if they are put in issue the trial court is at liberty to hear the evidence and to determine the facts.

One is not a holder in due course and, therefore, does not take the instrument free from defenses available to prior parties among themselves unless it appears (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; and (4) that at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the persons negotiating it.

Argued June 2d—decided July 30th, 1926.

ACTION by the indorsee of a promissory note against the maker, brought to the Court of Common Pleas for Fairfield County and tried to the court, *Huxford, J.;* judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*David Goldstein,* with whom was *Samuel Engelman,* for the appellant (plaintiff).

*Thomas M. Cullinan,* for the appellee (defendant).

HAINES, J.  The finding furnishes the following controlling facts:  On February 25th, 1921, the defendant made his note for $600, payable to the order of M. Gelfand, a business acquaintance residing in New York

City, three months after date at the First Bridgeport
National Bank of Bridgeport in this State, for value
received and with interest.  On May 18th, 1921,
Gelfand left the note at the Bronx Branch of the Public
National Bank of New York City, for collection.  The
note was duly presented to the First Bridgeport Na-
tional Bank, and was protested for nonpayment, but
no notice of the presentation and nonpayment was re-
ceived by the defendant.  On May 28th, 1921, defend-
ant went to New York and saw Gelfand regarding the
note and its nonpayment, and was informed by the
latter that the note was at the bank for collection, and,
the day being Sunday, he could not get it, but agreed
to send it to him later.  Defendant thereupon paid
Gelfand $309, being half the principal and accrued in-
terest, and gave him a note for the balance, payable in
three months, which note was fully paid by the defend-
ant at its maturity.  Defendant took a receipt from
Gelfand in lieu of receiving the old note for $600.  The
$600-note was never returned to the defendant, whose
first information of any further developments was the
service of the writ in the present action.  In February,
1921, when the $600-note was made, the plaintiff re-
sided in New York City.  At all times since, she knew
the defendant was in business in Bridgeport and where
he could be found, but gave him no notice, in any way,
of the claim upon which this action rests.  Her hus-
band is a cousin to Gelfand.  About a year and a half
before the institution of this suit, Gelfand was adjudi-
cated a bankrupt, and is now of parts unknown.  The
plaintiff waited almost four years after the maturity of
the note, and a year and a half after Gelfand's bank-
ruptcy, without making any demand upon the defend-
ant, and then brought this action.

Appellant seeks three changes in the finding:

(1) By striking from the third paragraph the words

"by said M. Gelfand, the payee." This paragraph recites that the "note was deposited by said M. Gelfand, the payee," at the Bronx Bank for collection. Plaintiff testified that *she* deposited the note for collection April 1st, 1921, and now asserts there was no evidence to the contrary. An examination of the transcript of evidence, however, discloses that the defendant testified that on May 28th he had a conversation with Gelfand in New York with reference to his failure to pay the $600-note at maturity, and then, by agreement between them, gave Gelfand $309 and a renewal note for $300, in full payment for the $600-note. At that time he was told by Gelfand, and believed, that the $600-note was in the bank, which was then closed, and that Gelfand would obtain and mail it to him. Gelfand then gave him a receipt for the $309 and the $300-note, reciting that these were received in payment for the $600-note. At a later conference between them he asked Gelfand for the $600-note, and was told by Gelfand, "you have got a receipt; I will never ask you for it again," and that the note was among his papers at the bank. If we disregard so much of this as depends upon hearsay testimony and properly subject to objection as such, it yet remains true that Gelfand's conduct makes it reasonably probable that he had himself deposited the note for collection and that it was still within his control after its due date had passed. It was within the province of the trial court to believe this version of the transaction and disbelieve the testimony of the plaintiff. Moreover, the plaintiff's delay in attempting to secure payment from the defendant, is in itself evidence that she did not have a valid claim. *Hurd* v. *Hotchkiss,* 72 Conn. 472, 481, 45 Atl. 11. It was the province of the court to determine which of these versions was the correct one, and the decision evidently was that the plaintiff's statement was not true.

Under such circumstances we cannot say the court was wrong.

(2) Appellant also asks that the words, "subsequent to its protest for nonpayment," be stricken from paragraph eleven, which recites that the note was delivered by M. Gelfand to the plaintiff "subsequent to its protest for nonpayment." The appellant argued that the legal presumption of delivery before protest, supported by the confirmatory testimony of the plaintiff, was conclusive upon the trial court. This could only result where there was no evidence upon the point from which the court could reasonably reach a different conclusion.

The protest papers in evidence do show, as appellant points out, that three notices of the protest were sent by the First Bridgeport National Bank. The note itself in evidence shows on its face the signature of the defendant, and on the back the indorsements of the Public National Bank of New York, Bertha Sacks, and Morris Gelfand, in reverse order. It does not conclusively appear, therefore, that the plaintiff was one of three to whom a notice was sent. The fact that the note, at the time of the trial, bore the name of the plaintiff as indorser, is equally inconclusive as to the time when it was put on there. The court did not believe the plaintiff's statement that her name was written there April 1st, 1921, and that she put the note in the bank for collection, but did believe that Gelfand had himself put the note in for collection. We cannot say the conclusion was so unreasonable that it should be set aside.

(3) Appellant seeks to strike out paragraph twenty-one of the finding, in which the court speaks as follows: "After observing the plaintiff and listening to her story on the witness stand and her explanation of when and how she acquired the note and why she

waited four years and until more than a year after said Gelfand's bankruptcy, before notifying the defendant that she owned said note, and that she claimed and demanded its payment as its bona fide holder in due course from him, I find, from that and the other evidence, that the plaintiff was not a bona fide holder of said note in due course." As in the two preceding claims, the appellant argued that "a court cannot arbitrarily ignore presumptions of law and affirmative uncontradicted evidence tending to prove certain facts." That is true, but, as already pointed out, there was other evidence before the court from which the not unreasonable conclusion could be reached, that the plaintiff was not a holder in due course. And this paragraph, though not in the most desirable form, should stand.

The appellant lays much stress upon the presumptions which the law of negotiable instruments raises in her favor, viz., that every holder is deemed prima facie to be a holder in due course, General Statutes, § 4417; that there was a valid delivery, General Statutes, § 4374; that the plaintiff's indorsement was made before the maturity of the note, General Statutes, § 4403; that ownership will be presumed from possession. *Collins* v. *Gilbert,* 94 U. S. 753. But all are rebuttable. The evidentiary value thus given to a note by the Negotiable Instruments Act, is limited to the making of a prima facie case, and the court is at liberty, in a case where the issues are raised, to hear evidence and decide whether the facts are in accord with the presumptions. *Mersick* v. *Alderman,* 77 Conn. 634, 638, 60 Atl. 109, citing *Vanliew* v. *Second Nat. Bank,* 21 Ill. App. 126; *Curtis* v. *Mohr,* 18 Wis. 645; and *Duncan, Sherman & Co.* v. *Gilbert,* 5 Dutcher (29 N. J. L.) 521. Many of these presumptions are expressly stated in the Act to be prima facie, or until the

contrary is proved; e.g., General Statutes, § 4369, § 4374, § 4382, § 4417.

It is apparent that if the court believed the evidence submitted by the defendant as to what occurred between him and Gelfand, it could not sustain the claims of the plaintiff. The evidence was limited on both sides, but our examination of it convinces us that the subordinate facts found are supported by evidence, and the conclusions from them are not so unreasonable as to justify their removal from the finding.

By the fourth reason of appeal, the appellant contends that the judgment is not supported by the facts found. It is found that the plaintiff received the note from the payee, Gelfand, subsequent to its protest for nonpayment. A holder in due course must have taken the instrument under four conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; and (4) that at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. General Statutes, § 4410. A holder in due course takes the instrument free from defenses available to prior parties among themselves. General Statutes, § 4415.

From the facts found it is apparent that the plaintiff is not a holder in due course by reason of the second and fourth, if not also the third, of the above requirements. It also follows that the note in her hands was open in this action to defenses which the maker had against the payee, Gelfand. It being pleaded and proved that the defendant, the maker, had paid the note in full to Gelfand, the defendant's nonliability to the plaintiff in this action at once becomes obvious, and this

result cannot be changed by any decision we might make upon other reasons of appeal.

There is no error.

In this opinion the other judges concurred.