MARY GARRIS *vs.* JOSEPH CALECHMAN ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 7th, 1933—decided February 6th, 1934.

*George W. Crawford,* for the appellants (defendants).

*Louis Weinstein,* for the appellee (plaintiff).

HAINES, J.   The plaintiff is the sister of Rubin Gerbert who, prior to April 10th, 1926, was in partnership with the two defendants in the real-estate business.   There were no written articles of copartnership, but each owned an undivided one-third interest in the assets of the firm.   On the above date the partnership was dissolved by the mutual agreement of the parties, each accepting as his individual property a designated portion of the firm's assets, consisting of real estate and mortgages.   As part of the agreement of dissolution each partner guaranteed the other on a pro rata basis against losses, if any, which might later be sustained in the liquidation of his share, and likewise for partnership obligations paid by any one partner.

The first of these liquidation losses fell upon Rubin Gerbert in the sale of certain of the real estate which had been set to him upon the settlement.   The two defendants' share, being two-thirds of this loss, amounted to $1988.77.   They stated they were without the cash to pay him and they therefore gave him the joint and several note in question, dated December 4th, 1928, payable in one year with interest at six per cent payable quarterly.   At the request of Rubin they agreed to and did make his wife, Sonia, the payee of the note.   Soon after, the note with Sonia's indorsement in blank was negotiated to the plaintiff by Rubin. At that time he owed her $2000 for money she had advanced to him, and she accepted the note and $11.23 in cash which he also gave her, in full settlement of his debt to her.   She knew at that time that the part-

nership had been dissolved but knew nothing of any of the terms or conditions of the dissolution agreement. Neither Rubin nor the plaintiff ever indorsed the note. The makers paid her interest upon this note to April 9th, 1932, and this action was brought eighteen days later. On several occasions in 1930 and at least once in 1932, the defendant Benjamin promised the plaintiff to pay her the principal, saying that though he then had no money, as soon as times improved he would pay the note. Prior to the filing of their answer in this action, no claim was ever made by these defendants against Rubin on account of the agreement to indemnify for losses suffered by them. It appears that Benjamin has now sustained losses on the properties apportioned to him and has been compelled to pay substantial obligations of the former partnership. The amount is not stated.

None of these findings of fact are attacked upon this appeal nor is any further finding requested by the appellants. The trial court reached the conclusion that at the time the note was given, the defendants were jointly and severally indebted to Rubin for $1988.77 and gave the note therefor, and this conclusion is not contested upon this appeal. The court also held that the plaintiff took the note before maturity, in good faith and for value, and without notice of any infirmity or defect in the title thereto, of either Rubin or Sonia; that the plaintiff was the holder thereof in due course, free from defenses which might have been available to prior parties among themselves; that the debt of Rubin to the plaintiff constituted value given by her for the note, and finally that the plaintiff had sustained the burden of proof of her complaint, but that the defendants had failed to sustain the controverted affirmative allegations of their second defense.

The present appeal is stated by the defendants to be

based upon three main contentions: (1) that the plaintiff was not a bona fide holder in due course and the note in her hands was subject to defenses which could have been made against Sonia or Rubin, (2) that the defendants had a good defense as against the last named parties, and (3) that the court erred in a ruling as to the burden of proof.

The plaintiff alleged that she was the owner and holder of the note, and this was a sufficient allegation, prima facie, that she was a holder in due course with a right of recovery. General Statutes, § 4376; *Donnelly* v. *Garvan,* 111 Conn. 626, 630, 151 Atl. 168. The possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. 2 Daniel, Negotiable Instruments (7th Ed.) p. 1017, § 945; *Standard Cement Co.* v. *Windham National Bank,* 71 Conn. 668, 684, 42 Atl. 1006; *Arnold* v. *Lane,* 71 Conn. 61, 63, 40 Atl. 921. It was for the defendant to set up and prove the facts which limit or change the plaintiff's rights. *Mersick* v. *Alderman,* 77 Conn. 634, 638, 60 Atl. 109; *Kessler* v. *Valerio,* 102 Conn. 620, 623, 624, 129 Atl. 788; *Sacks* v. *Sheiman,* 105 Conn. 73, 78, 134 Atl. 240; Brannan, Negotiable Instruments (5th Ed.) pp. 322, 653, 657. This burden was met if the defendants established that the title of any holder who had negotiated the note was defective; the burden would then be on the plaintiff to establish that she or some person under whom she acquired title, was a holder in due course. But that rule does not apply in favor of one who became bound on the instrument before the defective title was acquired. General Statutes, § 4376; *Filosi* v.

*Crossman,* 111 Conn. 178, 182, 149 Atl. 774; *Parsons* v. *Utica Cement Mfg. Co.,* 80 Conn. 58, 60, 66 Atl. 1024; *S. C.,* 82 Conn. 333, 337, 73 Atl. 785.

While we do not look upon the statement of the court, "I assume that Mr. Crawford would have the opening and closing, that he has the affirmative issues here," as a ruling upon the burden of proof, yet even so considered, we can only conclude that the court had reference to the proof of the affirmatively claimed defects of title set up in the defendants' answer, and a ruling to that effect would, for the reasons above stated, have been correct.

We must resort to the finding to determine whether facts have been established showing that the plaintiff was not a holder in good faith and in due course, or whether there were defenses to the note which would have been good against Rubin or Sonia and available against the plaintiff.

Under the Negotiable Instruments Act a "holder in due course" is one who holds under four conditions: (1) that the instrument is complete and regular upon its face; (2) that he became the holder before it was overdue, without notice of previous dishonor, (3) that he took it in good faith and for value, and (4) that at the time it was negotiated to him, he had no notice of any infirmity or defect in the title of the person negotiating it. General Statutes, § 4369.

The first two requirements are of course fully met. The third is also established by the uncontested findings of fact. The plaintiff had a valid claim against Rubin for $2000 which she surrendered in consideration of the receipt from him of $11.23 in cash and the note for $1988.77, thus receiving the note for value. There is nothing in the record which shows the plaintiff was charged with knowledge of any other facts in regard to the note than what appear on the note itself,

payable to Sonia and by her indorsed in blank, making it payable to the bearer, and that the bearer was Rubin, and it was he who negotiated the note to the plaintiff. The facts of which she had knowledge as shown by the finding, are not sufficient to constitute notice to her of defective title, and thus to make out bad faith upon her part. General Statutes, § 4373. She was clearly a bona fide holder of this note.

Since the plaintiff gave value for this note, she is to be deemed the holder for value in respect of all parties who may have become such prior to that time. General Statutes, § 4343. She being a bona fide holder for value, the note is enforceable by her for the full amount against the makers without regard to defects of title of prior parties, even though there may have been such defects which would have rendered the note invalid as to them. 2 Daniel, *supra,* pp. 923, 927; Brannan, *supra,* p. 28. The record supports the conclusion of the trial court that the plaintiff took the note for value, in good faith and without notice of any infirmity of title in prior holders, and was an innocent holder for value in due course. This is conclusive of her right of recovery.

Two assignments relate to rulings on evidence. Examining the evidence before us, we amplify the finding so far as necessary to obtain an adequate statement of the rulings complained of. One of the questions asked of a witness and excluded by the court was: "On the date that he signed that note, what other property did he have in his own name excepting this that is included in this trust agreement?" Though incorrectly worded, this question obviously refers to the time that Rubin received the defendants' note. Its admission was claimed by the defendants as follows: "On consideration for the note for one thing, because if this man had no property . . . with these

contingent liabilities outstanding, a pre-existing debt is not a good consideration for that note. . . . My object . . . was to develop the insolvency of this man at the time of the giving of this note, that is, he had no other property in his name. . . ."

The question was apparently confined to the rights of Rubin and Sonia as against these defendants. If it be conceded for the purpose of the argument that this question was admissible to show that the note in the hands of Rubin and Sonia was not enforcible against the defendants, its exclusion was harmless even though erroneous. Having no knowledge of any defect in the note, the plaintiff took it from Rubin and rendered a consideration therefor by the surrender to him of the antecedent debt which he owed her. This was a good consideration as between them. General Statutes, § 4342. She became an innocent holder for value, without notice and in due course. Her rights were not affected by any infirmities of his title.

The same witness had testified that two of the pieces of real estate which had been held in trust by him, had been sold, and he was then asked, "Sold by whom?" to which he replied, "Naturally, by us three." He then added: "and there is a statement in Clark, Hall & Peck's, there is losses." The record makes it too obvious for discussion that it was this additional statement which the court excluded on motion, and that ruling was correct.

There is no error.

In this opinion the other judges concurred.