[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
During the argument of plaintiff's motion for summary judgment, it became apparent defendants were defending on the ground that plaintiff was not a holder of the subject note and mortgage and so lacked standing to bring this foreclosure action. Since standing implicates the court's jurisdiction (State v. Anonymous,237 Conn. 501, 510 (1996); in re Ryan V 46 Conn. App. 69, 72
(1997)), this court requested that defendant file a formal motion to dismiss, allowed plaintiff to file a brief on the issue, and on that motion held an evidentiary hearing. It must now decide the motion before the case can proceed further.
The court finds the following facts: the defendant Three Star Associates, by its general partners, defendants Todd W. Hoffman, I. Bradley Hoffman and Jeffrey Hoffman, executed and delivered to Suffield Bank a promissory note dated April 30, 1987 in the original principal amount of $800,000, secured by a mortgage on real property located in Hartford, Connecticut. The note was payable in monthly installments of interest and principal and due on May 1, 1997. In or about June of 1991 the Suffield Bank was in financial trouble and was forced to post collateral for overnight borrowing and clearing house transactions with the Federal Reserve Bank of Boston. Among the notes and mortgages pledged by Suffield Bank to the Federal Reserve Bank of Boston on July 3, 1991 was the subject note and mortgage of defendant Three Star Associates. In accordance with the practice at the time, the Suffield Bank delivered to the Federal Reserve Bank the original note of Three Star Associates, together with an endorsement of the note to the order of the Federal Reserve Bank of Boston.
On September 6, 1991 Suffleld Bank failed and the Federal Deposit Insurance Corporation ("FDIC") was appointed its receiver. Pursuant to 12 U.S.C. § 1821, the FDIC took possession of the assets of the Suffield Bank and succeeded by operation of the law to all the rights, titles, powers and privileges of Suffleld Bank in its assets. On September 6, 1991 the FDIC closing manager of the Suffield Bank wrote to the Federal Reserve Bank asking for a detailed listing of all securities held in safe keeping for the account of the Suffield Bank. On October 3, 1991 the Federal Reserve Bank responded to the effect that request for notes to be released for shipment back to the FDIC should be made on a particular form.
Mr. Barry Maddix, corporate counsel for the Federal Reserve Bank of Boston, testified that when a failed bank has no loans CT Page 3398 outstanding with the Federal Reserve Bank of Boston, the practice of the latter bank is to return all the collateralized notes and mortgage to the FDIC as receiver of the failed bank. He further testified that Suffield Bank, in September of 1991, had no outstanding loans with the Federal Reserve Bank of Boston so that the high probability was that the collateralized notes and mortgage, including the subject instruments from the defendants, were sent to the FDIC. He testified that the Federal Reserve Bank of Boston destroys its records after seven years, but if there had been any outstanding loans, the records would not have been destroyed. He said the practice of the bank, when it returned a note to a failed bank, was to stamp the endorsement canceled. He identified the stamp canceling the endorsement on the subject note as being that of the Federal Reserve Bank.
On November 16, 1999, the Federal Reserve Bank of Boston executed an assignment of promissory note and mortgage involving the subject note and mortgage to the order of the FDIC and added the following language in the assignment.
 "the intent of this assignment is to ratify and confirm that the Federal Reserve Bank of Boston transferred said promissory note and mortgage, with the right to enforce the promissory note, back to Suffield Bank by the Federal Reserve Bank of Boston's cancellation of the endorsement on the promissory note and return to Suffield Bank of the original promissory note and any assignment of mortgages. This assignment shall be affixed to said promissory note and or recorded on the Hartford Land Records."
The defendant failed to pay the subject note on its maturity date of May 1, 1994. The FDIC, on October 14, 1994, notified the defendant of the default and when payment was not made, started this action. On May 21, 1997, the FDIC, acting as receiver for Suffield Bank, assigned all of its right, title and intefest and into the note and mortgage to B.T.D.-1996-NPC 1, LLC, (hereinafter BTD) and endorsed the note to the order of BTD. On June 24, 1997, per the order of this court, BTD was substituted as party plaintiff
In this motion to dismiss, the defendant claims that the note reflects an endorsement to the order of the Federal Reserve Bank of Boston and "because there is no evidence that the Federal Reserve subsequently transferred the instrument to the FDIC in order to thereafter transfer the instrument to the purported CT Page 3399 plaintiff in such a manner to give the plaintiff any right to enforce the instrument, the plaintiff does not qualify' as a holder entitled to enforce the note."
There is no merit to this contingent. First, the short answer to this contention is that possession of a note by plaintiff imports prima facie that it acquired the note in good faith for value and in the course of business before maturity and without notice of any circumstances impeaching its validity. As the Appellate Court stated in SKW Real Estate Ltd. Partnership v.Gallicchio, 49 Conn. App. 563, 571 (1998) "`the production of the note establishes his [plaintiff's] case prima facie against the makers and he may rest there. . . . It was for the defendant to set up and prove the facts which limit or change the plaintiff's rights."' Quoting Garris v. Calechman, 118 Conn. 112, 115 (1934). the defendants attempt to raise doubts but present no evidence to demonstrate any defect in the transfer of the subject note and mortgage from Federal Reserve Bank to the FDIC.
Moreover, the facts are that the subject note and mortgage were properly returned to the FDIC. An exhibit established that the subject note, along with others, were endorsed by Suffield Bank to the order of the Federal Reserve Bank as collateral for overnight transactions. This was a practice when a weak bank faced insolvency and that was certainiy the condition the Suffield Bank in the summer of 1991. Mr. Maddix of the FDIC testified clearly that it was the practice of FDIC, when no loans were outstanding between it and a failed bank, to return collateralized instruments back to the bank on request. He further testified that the practice of the FDIC was to stamp the endorsement canceled and that the stamp on the original note was that of the FDIC.
The court finds as a matter of fact that the Federal Reserve Bank followed its usual practice of returning to the FDIC, as receiver of the failed bank, the collateralized instruments which it. had received from Suffield Bank. Federal Reserve Bank's cancellation of the endorsement has the significance of revealing the Federal Reserve Bank's lack of interest in the instrument and lends support to the inference the instruments were returned to FDIC. Returning possession constituted a negotiation of the subject note and made FDIC a holder of it. As stated in C.G.S. § 42a-3-201, "`Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who becomes a holder." CT Page 3400
Moreover the assignment by the Federal Reserve Bank, to the order of the Federal Deposit Insurance Company of the subject note and mortgage, dated November 16, 1999 further confirms that the FDIC had properly received the subject note and mortgage from the Federal Reserve Bank.
The court concludes that the plaintiff is the holder of the subject note and mortgage and has standing to bring this action. The motion to dismis is denied.
Robert Satter Judge Trial Referee