## CRITTENDEN v. WIDREVITZ.

(Circuit Court of Appeals, Second Circuit. April 14, 1921.)

No. 82.

1. Bonds ⬅═141—Evidence held not to warrant submitting to jury plaintiff's claim that defendant had notice bonds were stolen.

In an action for the conversion of negotiable bonds, which had been stolen from plaintiff, where defendant claimed to be a bona fide purchaser, evidence that defendant's intestate, when he loaned money on the security of the bonds, knew that a bank had refused to make the loan, *held* not to warrant an inference by the jury that defendant's intestate had knowledge of facts sufficient to put him on inquiry, in view of the bank's explanation that it refused the loan because the borrower's credit was bad.

2. Bonds ⬅═95—Knowledge of suspicious circumstances alone does not disprove good faith of purchaser for value.

The good faith of a purchaser of negotiable bonds for value before maturity is not disproved by the fact that he had knowledge of circumstances which would cause an ordinarily prudent man to suspect the validity of the title to the bonds; but such holder can lose his rights only by actual notice of the defect in the title or by bad faith.

3. Courts ⬅═376—New York Negotiable Instruments Law governs burden of proof of good faith by bond purchaser.

Rev. St. § 721 (Comp. St. § 1538), making the laws of the several states rules of decision in trials at common law in United States Courts, makes applicable to a suit in the United States District Court in New York for the conversion of negotiable bonds the provisions of Negotiable

Instruments Law N. Y. § 98, that, when it is shown that the title of any person who has negotiated an instrument is defective, the burden is on the holder to prove that he, or some one under whom he claims, acquired the title as a holder in due course.

In Error to the District Court of the United States for the Southern District of New York.

Action by William J. Crittenden against Dora Widrevitz, administratrix of Saul Widrevitz, deceased, for conversion of bonds. Judgment for defendant, and plaintiff brings error. Affirmed.

A. Gordon Murray, of New York City, for plaintiff in error.

Tobias A. Keppler, of New York City (Joseph L. Hochman, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. For convenience we shall refer to the parties as plaintiff and defendant.

The plaintiff owned 25 $1,000, 4 per cent. Alleghany county bonds. On the night of February 26, 1919, his office in Pittsburgh was burglarized, and these bonds were stolen. In October, 1919, 12 of the bonds were found by the district attorney of New York county to be in the possession of Dora Widrevitz. The bonds came into her possession under the following circumstances:

One day while her husband, now deceased, was at the Chatham & Phœnix National Bank, at the Bowery and Grand street, New York City, he met one Joseph Sugarman, who was also a depositor in the bank, and who was known to him. This acquaintance was of long standing. In a conversation which ensued, Sugarman asked Widrevitz to loan him $10,000, with these bonds as collateral, and this, for the account of his brother, S. C. Sugarman. The defendant's intestate asked the bank's representative as to the value of the bonds. Upon his recommendation, he promised to make inquiry at a brokerage firm, and stated he would advise Sugarman later if he would make the loan. He later, after having consulted a brokerage firm, agreed to loan $10,000, taking the bonds as collateral security. A check for $10,000 to the order of S. C. Sugarman was drawn and cashed at the same bank, and a four-months note was given, which was renewed when it became due. After notice, and subsequently, on December 22, 1919, the bonds were sold by an auctioneer, pursuant to the terms of the collateral note. Upon the trial, defendant's counsel stated as follows, in answer to an inquiry:

"Mr. Murray: I have no evidence to show that Widrevitz knew of these notices prior to his advance of the $10,000; but the whole theory of the case is that there were facts that would have been known, provided he had made the proper inquiry.

"The Court: In my opinion, he does not have to make inquiry, and I therefore sustain the objection to the deposition.

"Mr. Murray: Exception.

"The Court: I do not think the facts justify any imputation in this case. * * *"

There is no evidence showing direct notice to the defendant's intestate of the theft of these bonds. Again, the following colloquy took place between court and counsel:

"The Court: I do not believe I see it that way. No matter where the burden is, it seems to me the actual facts show that there was no notice, actual or imputed, to Mr. Widrevitz, when he bought these bonds.

"Mr. Murray: There is no actual notice."

Thereupon, on motion of defendant's counsel, the court directed a verdict in favor of the defendant.

[1] We think the evidence presented by the plaintiff did not raise a question of fact which entitled the plaintiff to have this claim submitted to the jury. There is proof in the record that the note received from Sugarman, with the bonds pledged as collateral security, was obtained for value, without actual notice of the theft of the bonds. Nor was there evidence of bad faith on the part of the defendant's intestate. It is sought, by inference, to infer that, because the bank refused Sugarman the loan, the defendant's intestate should not have made it, and that the circumstances of meeting at the bank, and Sugarman stating to defendant's intestate that he could not obtain a loan at the bank on the bonds in question, was sufficient to put the defendant's intestate upon notice. The explanation therefor, as given, which may have been satisfactory to the defendant's intestate, was that of the bank's officer, who said that Sugarman's credit at the bank was bad; that his checks often overdrew the amounts on deposit to his account, and for this reason business with Sugarman was undesirable.

[2] The bonds in question were negotiable paper. White v. Vt. & Mass. R. R. Co., 65 U. S. (24 How.) 575, 16 L. Ed. 221. Proofs, and not merely suspicious facts, are required in order to impeach the title of the holder of negotiable paper acquired for value and before maturity. Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934. One who purchases such paper from another, who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and circumstances that cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in it, or authority to use it for his own benefit, and though by ordinary diligence he could have ascertained those facts, he can lose his right only by actual notice or bad faith. Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193.

"The law is well settled that a party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can be produced only by bad faith, which implies guilty knowledge or wilful ignorance, and the burden of proof lies on the assailant of the title. It was so expressly held by this court in Murray v. Lardner, 2 Wall. 110, where Mr. Justice Swayne examined the leading authorities on the subject and gave the conclusion we have stated." Hotchkiss v. National Bank, 21 Wall. 359, 22 L. Ed. 645.

[3] Negotiable Instruments Law of New York (chapter 43 of the Consolidated Laws of 1909) § 98, provides:

"*Who Deemed Holder in Due Course.*—Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It was shown that the bonds in question had been the subject of a theft, and therefore that the title of the person who negotiated the transfer and delivery of the bonds, at the outset, was defective. The burden was therefore upon the appellee to show that she acquired title as the holder in due course. It having been established that the bonds were stolen, the burden then shifted to the appellee to establish that she was a bona fide holder for value in due course. We think that, by reason of section 721 of the Revised Statutes (Comp. St. § 1530), this burden was upon the defendant. Section 721 provides:

"The laws of the several states, except where the Constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, and courts of the United States, in cases where they apply."

Under the laws of New York, the burden of proof would, under the circumstances here disclosed, rest upon the defendant. Sabine v. Paine, 223 N. Y. 401, 119 N. E. 849, 5 A. L. R. 1444. Under the same local law, we think the facts here require the direction of a verdict. Second National Bank v. Weston, 172 N. Y. 250, 64 N. E. 949. There were no suspicious circumstances disclosed by this record, which indicate bad faith in defendant's intestate accepting these bonds as collateral security and later buying them with the $10,000 which he loaned. We think he has sustained the burden which the New York Negotiable Instruments Law cast upon him, and there was no evidence to the contrary which required the submission of the question to the jury as one of fact.

The judgment is affirmed.