ANGELO FILOSI *vs.* MURRAY A. CROSSMAN.

*Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

*Transferred from the Second Judicial District.

Argued October 29th, 1929—decided March 31st, 1930.

*Benjamin Slade,* with whom was *Louis Weinstein,* for the appellant (defendant).

*Joseph F. Berry,* for the appellee (plaintiff).

WHEELER, C. J. The complaint sets forth: Prior to May 1st, 1924, the plaintiff was the owner of three bonds of $1000 par each, and five bonds of $500 each, having an aggregate par value of $5500, viz.:

Orange Court, Nos. 870, 871, 907, 923, $500 each 6%½, $2000.

Orange Court, No. 758, $1000, 6½%, $1000.

M. Rich & Bros., No. 647, $1000, 6½%, $1000.

Argonne Apartments No. 893, $1000, 6½%, $1000.

2480 Broadway, No. 1780, $500, 6½%, $500.

Shortly after this date Henderson obtained these bonds from the plaintiff by means of fraudulent representations. Thereupon Henderson or someone acting as his partner or in his behalf negotiated and delivered these bonds to the defendant at a price less than the market value thereof, and the defendant had knowledge of such facts and transactions whether they pertained to Henderson, his partner or his agent and Henderson's action in taking these bonds amounted to bad faith. The defendant thereby converted the bonds to his own use. Subsequently plaintiff demanded that

defendant pay to him the value of the bonds but the defendant has refused to pay the plaintiff their fair market value.

The defendant made answer as to the purchase of these bonds that he had no information, admitted the demand and refusal and denied the rest of the facts as alleged. He specially answered: If plaintiff owned the described bonds he negligently placed them in the hands of Henderson and Flaherty with authority to sell, dispose of or transfer them; that defendant purchased $3000 of the Orange Court Apartment bonds (a part of the bonds described in the complaint) in good faith and for full market value and resold $2000 of these to Henderson and two days later repurchased from Flaherty these bonds at full market value with interest. Eleven days later defendant purchased of Henderson the other negotiable bonds described in the complaint at their fair market value with interest. At the time of purchase of all of these negotiable securities the defendant had no knowledge of any defect in their title or want of authority in the vendors to sell but purchased them in good faith in the ordinary course of business and at their fair market value. The plaintiff is estopped from asserting a title superior to that of the defendant in these securities.

The evidence shows that the three Orange Court (Miller & Co.) bonds were sold by Henderson to the defendant at $80 for each $100; two of these were repurchased by Henderson for $81 and in a few days resold to defendant for $80. The other Orange Court bond was sold to Balco for $1000 by defendant with his agreement to guarantee the buyer from loss, which he was subsequently required to do and now holds title to it and has deposited this bond with the receiver of Miller & Co. and the same has not yet been liquidated.

The evidence shows so irrefutably that Henderson

induced the plaintiff by means of fraudulent representations to sell and deliver to him the valuable negotiable bonds in suit in exchange for National Health Association notes of little or no value that we do not stop to review the evidence upon this point. The question of defendant's good faith in purchasing these bonds is the only question at issue upon the defendant's liability. That was one of fact for the jury to resolve. Upon this evidence we could not hold as matter of law, conflicting as a considerable part of it is, that the defendant purchased these bonds in good faith, much less could we so hold if the burden was on the defendant, as the court charged, to establish that he purchased these bonds in good faith. Upon the evidence the trial court did not err in denying defendant's motion to set aside the verdict and grant a new trial.

The court charged the jury: "Every holder is deemed prima facie to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is upon the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. In other words, while the defendant, in the absence of any evidence, would be considered a holder in due course, yet if it appears that Henderson's title to these bonds was defective by reason of his fraud, then the burden is cast upon the defendant to show by a fair preponderance of the evidence that he was a holder in due course." The charge assumes that this action is governed by § 4417 of the General Statutes, which provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims

acquired the title as a holder in due course. But this last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." Under this statute the burden is on the holder of a negotiable instrument bringing an action to go forward with his evidence; upon his laying in the note he makes out a prima facie case and the defendant then has the burden of going forward with the evidence; if he then proves a defect in the title the plaintiff payee must then go forward and support his burden of proof which rests on him from the beginning to the end of the action, satisfied in the first instance by proof of his prima facie case, this in turn giving away to defendant's proof of a defect in the title. Brannan's Negotiable Instruments Law (4th Ed.) p. 525; *Parsons* v. *Utica Cement Mfg. Co.*, 80 Conn. 58, 60, 66 Atl. 1024; 82 Conn. 333, 337, 338, 73 Atl. 785.

The Act applies where the action is brought upon the negotiable instrument. Neither in terms nor in its implications does it apply to any form of action save that upon a negotiable instrument. The plaintiff contends that the rule of the Negotiable Instruments Act does apply to the action before us and abrogates the usual rule as to burden of proof.

The present action is not one brought by the holder of the bonds but is an action of conversion to secure their value. The Negotiable Instruments Law has no relation to such an action any more than it has to one of replevin. In trover the burden is on the plaintiff to prove affirmatively his case. It does not shift from the plaintiff to the defendant, but remains on the plaintiff throughout the case. *Berman* v. *Kling*, 81 Conn. 403, 71 Atl. 507; Bowers on the Law of Conversion, § 594. It was thus necessary for the plaintiff to prove his ownership of these negotiable bonds, the

securing of them by means of the alleged fraud of Henderson, the bad faith of the defendant when he purchased them of Henderson, the demand by the plaintiff and the refusal of the defendant to return them, and the resulting damages. The majority of the cases considered by us where this rule has been invoked have been actions by holders of negotiable instruments. In most cases where the action is one of trover, conversion, replevin or detinue, this rule has not been generally applied. The leading case in this country holding that the burden of proof to establish bad faith is on the plaintiff is *Murray* v. *Lardner,* 69 U. S. (2 Wall.) 110, 121, 122, 17 L. Ed. 857. The action was one of detinue to recover three negotiable bonds. The trial court instructed the jury: "It will be for you, gentlemen of the jury, to say whether the defendant has made out,—as the burden lies upon the defendant,—whether he has made out that he received the paper in good faith, without any notice of the defect of the title; in other words, of the theft from the plaintiff; or whether there were such circumstances of the character which I have described to you as would warrant the inference that there was ground of suspicion; and that he should have made further inquiry as to the character of the paper." The court held: "Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. The result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it. . . . The instruction under consideration in the case before us is in conflict with the settled adjudications of this court."

This rule was upheld in *Hotchkiss* v. *National Banks,* 88 U. S. (21 Wall.) 354. It was followed in *Pridgen* v. *Baugh & Sons Co.* (C.C.A.) 30 Fed. (2d) 353; *Perth Amboy Mut. Loan Assn.* v. *Chapman,* 80 N. Y. App. Div. 556; *McKeen* v. *Converse,* 68 N. H. 173, 175, 39 Atl. 435; Jones on Corporate Bonds & Mortgages (1907 Ed.) § 200.

A rule which permitted a plaintiff in trover, conversion, replevin or detinue to prove his former ownership of a negotiable instrument and the payment of a fair consideration for the same and then cast upon the defendant the burden of proving his own good faith as the holder of the security which may have passed through several hands would impose upon dealers in securities so heavy a burden that it might restrict negotiation in them. "These securities are found in the channels of commerce everywhere, and their volume is constantly increasing. They represent a large part of the wealth of the commercial world. The interest of the community at large in the subject is deep-rooted and wide branching. It ramifies in every direction, and its fruits enter daily into the affairs of persons in all conditions of life." *Murray* v. *Lardner,* 69 U. S. (2 Wall.) 110, at page 122. Among the cases taking a contrary view, which we do not support, are *Crittenden* v. *Widrevitz* (2d Circuit) 272 Fed. 871, which was an action for the conversion of negotiable bonds. It was there held that as the bonds had been stolen and the title of the person who negotiated the bonds was defective the burden was on the defendant to show that she acquired title as a holder in due course under the New York Negotiable Instruments Act, this provision being identical with our own. A similar holding was had under a Minnesota statute. *Paine* v. *St. Paul Union Stock Yards Co.,* 28 Fed. (2d) 463. In actions for trover or conversion for the conversion of logs the

same rule as to the burden of proof is applied as in *Crittenden* v. *Widrevitz*, *supra.* *Hassam* v. *Safford Lumber Co.*, 82 Vt. 444, 455, 74 Atl. 197; *Nashville, C. & St. L. Ry.* v. *Walley* (Ala., 1906) 41 So. 134; *Young* v. *Pine Ridge Lumber Co.* (Tex. Ct. of Civ. App. 1907) 100 S. W. 784.

Since a new trial must be ordered, there is no occasion for considering other errors based upon the charge or the refusal to charge as requested. We refer briefly to a few of the rulings which are likely to arise upon the new trial.

The plaintiff was permitted to testify as to the price he paid Henderson for the bonds in suit which he had purchased between 1920 and 1922. The admissibility of the evidence was within the legal discretion of the court; its remoteness merely affected its weight. *Rosenstein* v. *Fair Haven & W. R. Co.*, 78 Conn. 29, 34, 81 Atl. 43. After plaintiff had testified to the delivery to Henderson of the bonds in suit of the par value of $5500 in exchange for the Health Association notes in May and June, 1924, the court permitted the plaintiff to prove that in July and August he exchanged other bonds of a par value of $11,000 for Health Association notes as tending to prove the fraud of Henderson and not in proof of the fraud of the defendant. The evidence was admissible as tending to prove the continuous fraudulent conduct of Henderson at about the time of the delivery of the bonds in suit. Other fraudulent transactions at about this time by which Henderson obtained other bonds of the plaintiff in exchange for Health Association notes, whether the transactions occurred before or after the delivery of the bonds in suit, were admissible in proof of Henderson's fraud as to the bonds in suit. *McLaughlin* v. *Thomas,* 86 Conn. 252, 260, 85 Atl. 370.

The letter of Miller & Co. to the former customers

of Henderson warning them against disposing of their bonds, and received by plaintiff, who called Henderson's attention to it, was a part of this entire transaction and plainly admissible. The number of objections in actions of fraud will be largely lessened if proper recognition is given to the rule: "In actions for fraud, large latitude is always given to the admission of evidence." *Butler* v. *Watkins,* 80 U. S. (13 Wall.) 456, 464.

Miss Cook testified that National Health Association notes were offered to her in exchange for some bonds and she made some investigation of this security, in the course of which she attended under a subpœna a grand jury meeting in Massachusetts which was making inquiry concerning two of the representatives of this Health Association. This evidence was admitted over defendant's objection as tending to prove Henderson's fraud. Defendant's objection to the offer should have been sustained. No possible basis that we can conceive of existed for its admission. Nothing in the record appearing of a contrary practice in Massachusetts, we assume it to be true there as here, that the proceedings of the grand jury are secret. Henderson's fraud has been so overwhelmingly established in the evidence that the admission of this evidence could not be held to be harmful. Henderson testified in behalf of the plaintiff that he had sold in all from $60,000 to $65,000 of Strauss bonds to defendant. He was then inquired of as to a sale of Miller & Co. bonds taken in trade from Mr. and Mrs. Dutcher which he sold defendant in October, 1923, at $80, or $800 for a $1000 bond. The witness also testified that the Miller & Co. selling price on the Orange Court bonds on May 23d, 1924, when these bonds were obtained from the plaintiff, was $95.58, or $955.80 for a $1000 bond. All of this evidence was received over

the defendant's objection. It was clearly admissible in proof of the market value of the bonds in suit and as tending to prove that defendant obtained these bonds below their market value. For a like reason the evidence of the price defendant paid for Strauss bonds was admissible. Henderson testified that while he was in State prison under sentence for having defrauded the Misses Cook he requested defendant to call upon him there which the defendant did two or three weeks after he first received the request and the witness informed defendant that Gwillim, the broker in Bristol who had purchased securities from Henderson had been sued by the Cooks. The witness was then permitted to testify that he gave Gwillim $100 to help him to defend the suit and the defendant also inquired if he could do anything for Henderson. This evidence was admissible on the issue of the bad faith of the defendant in purchasing the bonds in suit, otherwise it is difficult to see what interest he would have in helping bear the expense of the suit against Gwillim, or in offering to help Henderson who had been convicted of fraud toward the Cooks and who had sold him bonds, some of which might involve the defendant in litigation.

The evidence of the secretary of the defendant as to the value of the Balco $1000 bond at the time when defendant had been obliged to redeem it under his guaranty was properly excluded. So far as the record reveals she had no knowledge of this other than what was told to her by defendant.

The defendant was inquired of by his counsel as to the "bid and ask" value of the Balco bond at the time the National Health Association went into the hands of a receiver on September 3d, 1926, and the question was excluded. The evidence was somewhat remote, but admissible in proof of the value of the bond at the

time defendant first obtained it. Evidence of the value of this bond might tend to mitigate the damage so far as concerned this bond. Again we could not upon this record regard this as a harmful error.

There is error and a new trial is ordered.

In this opinion the other judges concurred.